Filed 12/19/14  In re J.H. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re J.H., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D066250 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. EJ3617, EJ3617A) |
| H.H., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

Benjamin Brueseke, under appointment by the Court of Appeal, for Minor.

H.H. (Mother) appeals from a juvenile court order terminating her parental rights to her minor daughter (JH). (Welf. & Inst. Code, § 366.26.)[1] Mother challenges the sufficiency of the evidence to support the court's finding that JH is adoptable. We affirm.

FACTS AND PROCEDURE

*Relevant Background*

In November 2012, nine-year-old JH was placed into protective custody after her mother was involved in several violent confrontations with her boyfriend and with a male roommate. Shortly after, the San Diego Health and Human Services Agency (Agency) filed a dependency petition alleging JH was at risk of substantial physical harm if she remained with Mother. (§ 300, subd. (b).) The next month, JH was placed with her second cousin (Caretaker), who was married and had young children.

After sustaining the Agency's allegations, the court removed JH from Mother's care, ordered reunification services, and set a six-month review hearing. No father came forward during the dependency proceedings.

At the six-month review hearing, in November 2013, the court found JH's return to Mother's custody would be detrimental and the services provided had been reasonable. The court found Mother had not made meaningful progress with her case plan and had failed to mitigate the protective issues. The court terminated reunification services and scheduled a section 366.26 hearing.

---

1        All statutory references are to the Welfare and Institutions Code.

*Section 366.26 Assessment Reports*

Four months later, Agency social worker Dannielle Moores prepared a report for the section 366.26 hearing. In the report, Moores described 10-year-old JH as an "attractive" and "vivacious" young girl "with a very likeable personality," who is "affectionate and loving" and has a wide variety of age-appropriate interests, including involvement in an after-school cheerleading program. Moores said that although JH has manifested certain behavioral problems associated with an ADHD diagnosis and "can be oppositional," she now has an Individual Educational Plan and is receiving counseling that has helped her learn to control her emotions. Moores said that JH is developmentally on target and doing much better at school and at home and seems to thrive on structure and clear limit setting. Moores also noted that JH is in generally good health, but that she continues to have issues with bedwetting and that JH has reported pain or burning upon urination. Additionally, JH has "occasionally soil[ed] herself during the day time."

Regarding Mother, Moores said that Mother's visits have been sporadic and difficult. Mother was often "volatile and out of control," and has a history of being involved in violent confrontations, including committing a serious assault against another woman. Mother appeared to be under the influence during one visit, and did not engage in positive interactions during other visits. Moores stated: "There is no doubt that [Mother] has a relationship with [JH] and that in her own ways she cares about her. [But Mother] has not been in the role of parent to [JH] in over a year and unfortunately, [Mother] has not demonstrated in over a year that she can adequately parent or provide a safe home and environment for JH. . . . Any benefit that there might be of a future

3

relationship with [Mother] does not outweigh the benefits of adoption with a stable and loving parent . . . ."

With respect to JH's current placement, Moores stated that Caregiver has known JH since she was an infant and has cared for her "off and on" since that time. Caregiver is "very attached to" JH and has expressed a "full commitment to adopting" her. Caregiver said she loves JH "like one of her own children and wants her to have a safe and permanent home." Caregiver is married and has four young children. Although the couple recently separated and are contemplating a divorce, they remain "best friends." Moores stated that Caregiver has provided JH with a "loving family experience . . . that also includes structure and limits on behavior when needed." JH said that "she likes living with [Caregiver] and her family and she would like to remain with them and be adopted."

Moores opined that JH is likely to be adopted upon termination of parental rights. The social worker explained Caregiver's strong commitment to adopting JH, and that in the event Caregiver could not adopt her, there are 12 other San Diego County families with approved adoption home studies that are seeking a child matching JH's characteristics. Moores also described additional placement options with out-of-county and out-of-state families.

Based on Moores's report, the Agency recommended that Mother's parental rights be terminated and that the court select adoption as the permanent plan.

In an addendum report filed two months later, Moores stated that Mother is pregnant and was recently sentenced to three years of probation and 180 days of jail time

4

(for an unidentified criminal offense). Moores further discussed Caregiver's numerous attempts to schedule a medical appointment to address JH's bedwetting issues, and indicated that she would continue to do so. Moores concluded: JH "continues to be an adoptable child. She is an attractive young girl with a pleasant personality. She is in overall good health and her development appears to be within normal limits. . . . [¶] . . . [¶] . . . Any benefit that there might be in a future relationship with the mother does not outweigh the benefits of adoption in a stable and loving home. [¶] . . . [¶] [JH] deserves a permanent home where she can grow up without the trauma that she experienced in the care of her mother. The Agency is recommending that parental rights be terminated and the child's permanent plan becomes that of adoption."

*Section 366.26 Hearing*

At the section 366.26 hearing, Mother and JH were each represented by counsel. At the outset of the hearing, the court stated: "This matter is set for a contested 26 hearing. . . . [¶] Is this still a contested 26 hearing?" Mother's counsel responded: "*It is not*. I would make a brief statement. My client loves her daughter dearly. *She is in agreement with this plan today because she believes it is what is best for her daughter.* It certainly does not diminish her feeling for her. She is trying to do what is best for her at this time in her life. She just doesn't want anybody to think it is because she doesn't care." (Italics added.) JH's counsel then said that both he and JH agree with the Agency's parental termination recommendation. He said therapy has been scheduled and there will be additional follow-up on other related issues.

5

The court then ordered parental rights terminated. The court stated it had read and considered the Agency's section 366.26 reports. The court found clear and convincing evidence that JH was likely to be adopted if parental rights are terminated. The court also found that none of the statutory exceptions apply.

## DISCUSSION

### I. *Overview*

After reunification services are terminated, the court's focus shifts from preserving the family to promoting the best interests of the child, including the child's interest in a stable, permanent placement that allows the caregiver to make a full emotional commitment to the child. (*In re Fernando M*. (2006) 138 Cal.App.4th 529, 534.) "Adoption, where possible, is the permanent plan preferred by the Legislature." (*In re Autumn H*. (1994) 27 Cal.App.4th 567, 573; accord *In re D.M.* (2012) 205 Cal.App.4th 283, 290.)

If the court finds a child cannot be returned to his or her parent and is likely to be adopted if parental rights are terminated, it must select adoption as the permanent plan unless it finds a compelling reason for determining that termination of parental rights would be detrimental to the child under one or more of the enumerated statutory exceptions. (§ 366.26, subd. (c)(1)(A) & (B)(i)-(vi).) The parent has the burden to establish the facts supporting an exception. (*In re C.F.* (2011) 193 Cal.App.4th 549, 553.)

In her opening brief, Mother contends the court erred in failing to find the exception set forth in section 366.26, subdivision (c)(1)(B)(i), which provides an

6

exception to the adoption preference if terminating parental rights would be detrimental because "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." However, in her reply brief, Mother states she has "withdrawn" this argument and instead challenges the court's judgment only on its factual finding that JH is likely to be adopted. Mother filed a supplemental appellate brief supporting this argument. For the reasons explained below, we conclude the argument lacks merit.

## II. *Legal Principles Governing Adoptability Finding*

"The court may terminate parental rights only if it determines by clear and convincing evidence the minor is likely to be adopted. (§ 366.26, subd. (c)(1).) . . . In determining adoptability, the focus is on whether a child's age, physical condition and emotional state will create difficulty in locating a family willing to adopt. [Citations.] To be considered adoptable, a minor need not be in a prospective adoptive home and there need not be a prospective adoptive parent ' "waiting in the wings." ' [Citation.] Nevertheless, 'the fact that a prospective adoptive parent has expressed interest in adopting the minor is evidence that the minor's age, physical condition, mental state, and other matters relating to the child are not likely to dissuade individuals from adopting the minor. In other words, a prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent or by some other family.' [Citation.]" (*In re R.C.* (2008) 169 Cal.App.4th 486, 491 (*R.C.*), italics omitted.)

"When reviewing a court's finding a minor is adoptable, we apply the substantial evidence test. [Citations.] If, on the entire record, there is substantial evidence to support the findings of the juvenile court, we must uphold those findings. We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or weigh the evidence. [Citations.] Rather, our task is to determine whether there is substantial evidence from which a reasonable trier of fact could find, by clear and convincing evidence, that the minor is adoptable. [Citation.] The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the finding or order. [Citations.]" (*R.C., supra*, 169 Cal.App.4th at p. 491.)

### III. *Analysis*

The court made a finding by clear and convincing evidence that JH is likely to be adopted. Mother's challenge to the adoptability finding fails on two grounds.

First, Mother forfeited her right to assert the claim on appeal because she did not challenge the Agency's report or recommendation in the proceedings below. Instead, Mother's counsel affirmatively expressed Mother's position that she agreed with the Agency adoption recommendation because the proposal is "what is best for her daughter." Mother now seeks to advocate for a completely different outcome. Under well-established appellate rules, she has no right to do so.

A party may not assert theories on appeal that were not raised in the trial court. (*In re G.C.* (2013) 216 Cal.App.4th 1391, 1398; *Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 686.) This doctrine applies in dependency proceedings, including in cases involving failure to challenge an adoption assessment report or to challenge the

8

public agency's adoption recommendation. (See *G.C., supra*, 216 Cal.App.4th at pp. 1398-1399; *In re Dakota S.* (2000) 85 Cal.App.4th 494, 502.) This rule "serves vital policy considerations of promoting finality and reasonable expedition" in the Legislature's "carefully balanced [dependency] scheme," and preventing a parent's "late-stage 'sabotage of the process' " through collateral attacks on otherwise final orders. (*In re Jesse W.* (2001) 93 Cal.App.4th 349, 355.)

Second, even if we were to reach the issue on the merits, substantial evidence supports the juvenile court's finding that JH is likely to be adopted. It was undisputed that Caregiver (a close relative) was fully committed to adopting JH and JH wanted to be adopted by the Caregiver. JH had made substantial progress while in Caregiver's home and JH was strongly bonded to Caregiver and her family. The evidence showed Caregiver had provided JH with a loving and positive home environment, and wanted to adopt JH.

Additionally, the evidence showed that in the event Caregiver was unwilling or unable to adopt JH, there were 12 approved adoptive San Diego County families who were interested in adopting a child with JH's characteristics. JH was described by her Court Appointed Special Advocate (CASA) as a "beautiful child, inside and out" who has a "winning smile and a sparkle in her eyes when she is happy. She enjoys new adventures and is an eager participant in most activities." The social worker similarly said JH is an "attractive young girl with a very likeable personality" who has many age-appropriate interests and is now doing well in school. These facts support that JH would

9

not be a difficult placement, and was likely to be a strong candidate for adoption with Caregiver or with numerous other prospective adoptive families.

Mother argues that JH has special needs that were not adequately addressed in the Agency's adoption assessment report, including her behavioral issues and her bedwetting and occasional daytime soiling issues. However, social worker Moores identified and discussed these issues, but implicitly concluded that none of them precluded adoption in this case. The court had a reasonable basis to agree with this conclusion.

The evidence showed JH is a healthy, "adorable" child who is "compassionate," "makes friends easily," and enjoys helping others. Although JH has had some behavioral issues and possibly some medical issues relating to using the toilet and bedwetting, the Agency's report made clear that these issues could be addressed through medical care, therapy, and continued stability. The evidence further showed that JH is doing much better at school and at home and "seems to thrive on structure and clear limit setting." She is loved and welcomed into Caregiver's family and has thrived there. On this record, the court had an ample evidentiary basis to conclude that even if JH had certain special needs, they would not be an obstacle to adoption.

Mother also argues that Caregiver is an unsuitable adoptive parent because she did not promptly medically address JH's bedwetting issues; she has four other young children; and she is currently divorcing her husband. However, a selection and implementation hearing does not provide a forum for a parent to contest the "suitability" of prospective adoptive parents as long as the minor is generally adoptable. (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1650-1651; see *R.C., supra*, 169 Cal.App.4th at p. 494.)

10

"[T]he question of a family's suitability to adopt is an issue which is reserved for the subsequent adoption proceeding." (*In re Scott M.* (1993) 13 Cal.App.4th 839, 844.) The record supports that JH was likely to be adopted within a reasonable time, either by Caretaker or another family. During the adoption proceeding, the court may consider all of the relevant facts—including the existing bond between Caretaker and JH and Caretaker's demonstrated ability or inability to properly parent JH—in determining whether Caregiver is a suitable adoptive parent or whether another adoptive placement would serve JH's best interests.

DISPOSITION

Order affirmed.


HALLER, J.

WE CONCUR:


McCONNELL, P. J.


McINTYRE, J.

11