Filed 2/2/22  In re L.K. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re L.K., Person Coming Under the Juvenile Court Law. | B310763 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>M.K.,<br><br>Defendant and Appellant. | Los Angeles County Super. Ct. No. 20LJJP00718 |

APPEAL from orders of the Superior Court of Los Angeles County, Stephanie M. Davis, Judge Pro Tempore. Affirmed.

Emery El Habibiy, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

# INTRODUCTION

The juvenile court exercised jurisdiction over L.K., the child of L.M. (mother)[1] and M.K. (father), under Welfare and Institutions Code[2] section 300, subdivisions (a) and (b). It found L.K. was at risk of harm due to father's physical abuse of L.K., violent conduct toward mother, and alcohol abuse, as well as mother's failure to protect L.K. from father's conduct. Subsequently, the court removed L.K. from father under section 361, subdivision (c)(1) and placed her with mother under the supervision of the Department of Children and Family Services (the Department). It ordered father to participate in enhancement services and granted him monitored visits in a therapeutic setting.

On appeal, father contends: (1) the jurisdictional findings regarding his physical abuse of L.K., his infliction of domestic violence on mother, and his alcohol abuse are unsupported by substantial evidence; (2) removal was unwarranted because reasonable alternatives to removal were available to protect L.K. if she were returned to father; (3) the juvenile court abused its discretion by including certain services in his court-ordered case plan; and (4) the court improperly delegated its authority to determine the frequency of his visits with L.K. to her therapist.

As discussed below, we conclude father's first three arguments are without merit. We further conclude father

---

[1]    Mother is not a party to this appeal.

[2]    All undesignated statutory references are to the Welfare and Institutions Code.

2

forfeited his challenge to the portion of the dispositional order concerning his visits with L.K. Accordingly, we affirm.

## BACKGROUND

Mother and father are the parents of L.K., who was born in November 2004. Per a family law court order filed in 2010, they share joint legal custody of L.K., but father has sole physical custody. Until August 2020, L.K. lived with both parents at father's home in Bakersfield. At that point, mother left the home and moved into the home of L.K.'s maternal grandmother in Palmdale.

On November 6, 2020, L.K. ran away from father's home and had a friend drive her to mother's residence. The next day, father informed Deputy Gardner of the Palmdale Sheriff station that he had filed a missing person report for L.K. and "asked [him] to see if [L.K.] was at mother's home." He provided Gardner with a copy of the 2010 court order regarding the parents' custody of L.K.

Upon conducting a welfare check at mother's home, Gardner observed L.K. inside. Although father originally told Gardner that he would allow L.K. to stay at mother's home, he later informed Gardner that he had changed his mind and did not want L.K. to remain with mother. Consequently, Gardner brought L.K. to the station. Father agreed to pick up L.K., but noted it would take him several hours to get there. Subsequently, however, he told Gardner he was unable to retrieve L.K., and that she should be placed in the Department's custody. The events on November 7, 2020 prompted a referral to the Department.

On the same evening, a Department social worker spoke with L.K. at the Sherriff's station. L.K. told the social worker

"she left home because there is a lot of fighting at home [and there was] yelling[ ] [and] screaming happening every day." Among other things, she also related father has been physically violent with her, that she has seen father hit mother, that father has called her and mother "bad names[,]" and that father "is a 'high functioning' drunk" who regularly drinks significant amounts of alcohol in the home.

Following its investigation, on November 10, 2020, the Department filed a petition under section 300, subdivisions (a) and (b) on L.K.'s behalf. The petition alleged L.K. was at substantial risk of serious physical harm due to father's physical abuse, his infliction of domestic violence on mother, his alcohol abuse, and mother's failure to protect her from father.

At the jurisdictional hearing held in December 2020, the juvenile court sustained the petition as pled and declared L.K. a dependent of the court under section 300, subdivisions (a) and (b). Subsequently, at the dispositional hearing held in February 2021, the juvenile court removed L.K. from father and placed her with mother under Department supervision, on the condition that mother comply with her court-ordered case plan. The court granted father enhancement services. His court-ordered case plan required him to participate in a full drug and alcohol treatment program with aftercare, random or on-demand weekly drug and alcohol testing, a 12-step program, a domestic violence program, and individual counseling. The juvenile court also ordered father to have monitored visitation in a therapeutic setting, and specified that "visits will be a minimum of one hour."

Father timely appealed.

4

# DISCUSSION

## I. Father's Challenges to the Jurisdictional Findings

### A. Legal Principles and Standard of Review

Under section 300, subdivision (a), the juvenile court may exercise jurisdiction over a child if it finds "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian." Pursuant to section 300, subdivision (b)(1), the juvenile court may exercise jurisdiction over a child if it finds "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of the child's parent or guardian to adequately supervise or protect the child[.]"

We review a juvenile court's jurisdictional orders for substantial evidence. (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 992.) Under this standard, "we view the record in the light most favorable to the juvenile court's determinations, drawing all reasonable inferences from the evidence to support the juvenile court's findings and orders." (*Ibid*.) "We do not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

"Substantial evidence must be of ponderable legal significance. It is not synonymous with 'any' evidence. [Citation.] The evidence must be reasonable in nature, credible, and of solid value." (*In re Dakota H.*, *supra*, 132 Cal.App.4th at p. 228.) "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the finding or order." (*Ibid*.) ""The ultimate test is whether it is reasonable for a trier

of fact to make the ruling in question in light of the whole record.”’” (*In re Yolanda L., supra*, 7 Cal.App.5th at p. 992.)

### B. Father's Physical Abuse of L.K.

Father contends the jurisdictional findings pertaining to his physical abuse of L.K. are unsupported by substantial evidence. Although he acknowledges L.K. reported "several instances of physical abuse over the past four years," he argues those incidents "were remote in time and [are] unlikely to recur." Accordingly, he contends "there was a lack of a current risk of harm to [L.K.] at the time of the jurisdiction hearing," and therefore "the juvenile court improperly sustained the [allegations] for physical abuse."

We disagree with father's argument. As discussed below, the evidence demonstrates father was frequently violent with L.K. in numerous ways over the last four years. Further, the record reflects that at the time of the jurisdictional hearing, L.K. remained at risk of harm due to his physical abuse, as he has refused to accept responsibility for or otherwise acknowledge his actions. He is therefore unlikely to change his behavior in the future. Consequently, the juvenile court did not err by sustaining the allegations pertaining to his physical abuse of L.K.

During separate interviews with the Department, mother and L.K. each reported father began physically abusing L.K. when she was 12 years old. According to mother, father's physical abuse of L.K. "happened so often over the years that it [was] impossible [for her] to pinpoint every time [ ]" it occurred. Mother stated father has grabbed L.K. by the hair, placed her in a "choke hold", pushed her to the ground, and kicked her on the head while she was on the ground.

6

L.K.'s reports of abuse were consistent with mother's. L.K. stated father has choked her, and "would often push her, pull her hair[,] and spit on her." In recounting specific incidents of physical abuse, L.K. reported that during an argument in 2018, "father came from behind her and put his arm around her neck so the crease of his elbow was against her neck and held her tight." She also stated that in the summer of 2019, father pushed her to the ground and kicked her several times on the back of her head, leaving welts. L.K. related the most recent incident occurred in mid-October 2020, just a few weeks before this case was initiated. L.K. stated that, for no apparent reason, father took her cell phone away, causing her to "panic[ ]" because she felt "her cell phone is the only way she can call for help if . . . father gets too intoxicated." When she tried to get her phone back, father pushed her, pulled her hair, and spat on her.

L.K.'s maternal adult half-sister, J.R., reported that although "she never witnessed [father] hitting [L.K.], . . . [L.K.] ha[s] told her about numerous incidents of him dragging her ([L.K.]) by the hair, holding/pinning her down on the bed, and spitting on her." J.R. reported father was similarly abusive with her when she visited mother and father during her childhood, and when she resided with them for a short period of time as a teenager. In addition, L.K.'s adult maternal half-brother, A.L., stated L.K. "has . . . reported to him that [father] has been very aggressive towards her."

Despite this, father has denied physically abusing L.K. He told the Department that J.R. was "'coaching'" L.K. and telling her to make false reports of abuse.

In sum, substantial evidence demonstrates father has engaged in a repeated pattern of violent behavior toward L.K.

7

since she was 12 years old. Moreover, substantial evidence demonstrates he has refused to acknowledge or otherwise accept responsibility for his abusive behavior. Under these circumstances, the juvenile court could reasonably infer father's violent conduct is likely to reoccur, and properly find that at the time of the jurisdictional hearing, L.K. was at substantial risk of serious physical harm due to father's physical abuse.

### C. Father's Violent Conduct Toward Mother

Father contends the jurisdictional findings pertaining to his infliction of domestic violence on mother are unsupported by substantial evidence because "the incidents of domestic violence were remote in time and [are] unlikely to recur, as . . . mother had moved out of the family home in August 2020 and had no plans to return." He therefore contends that at the time of the jurisdictional hearing in December 2020, L.K. was not at risk of harm due to ongoing domestic violence between her parents. We disagree with his argument.

Mother reported that she was in a relationship with father for 17 years before leaving his home and moving in with maternal grandmother in August 2020. She related that for "almost their entire relationship[,] [father] has been emotionally and physically abusive towards her." Among other incidents, mother reported that when L.K. was a teenager, father sprayed mother with a pressure washer during an argument, using sufficient pressure to "rip[ ] her shirt off and t[ear] up her skin." Shortly thereafter, L.K. saw mother's injuries and went to a friend's house because she was afraid. Mother also related that in 2016, father pushed her to the ground and kicked her in the face while wearing steel-toed boots, causing "her eye . . . to sink in and swell up to the

8

point that she could not see." Similarly, L.K. reported father has been violent with mother often throughout her childhood for as long as she could remember. L.K. stated she has seen father kick mother in the face, shove her head under the water in a pool, hit her with his hand, drag her around the house by her hair, and try to suffocate her by shoving her head into the couch.

Father correctly observes mother moved out of his home in August 2020 and has not returned or spoken to him since then. As the Department points out, however, mother's departure from the home was fairly recent, having occurred only four months before the jurisdictional hearing. More important, the record reflects this is not the first time she has left father. Specifically, mother reported "she had left father's home before due to intimate partner violence," which resulted in the family law custody order entered in 2010. She later reconciled with father and resumed her relationship with him. In addition, mother related her decision to leave father in August 2020 was largely related to her relatively recent sobriety from longstanding alcohol abuse. While the evidence is mixed regarding how long she has been sober, it establishes that, as of the jurisdictional hearing, mother had only been sober for eight to nine months at the most, and four to five months at the least. Moreover, while Department noted the evidence did not indicate L.K. was at risk of harm due to mother's alcohol abuse, it still expressed concern for mother's ongoing sobriety given her extensive history of abuse, and recommended services to ensure she remained sober in the future.

Viewing the evidence, as we must, "in the light most favorable to the juvenile court's determinations [ ]" (*In re Yolanda L.*, *supra*, 7 Cal.App.5th at p. 992), we conclude the juvenile court

could appropriately infer that although mother recently moved out of father's home, there is a reasonable possibility that they could reconcile and resume their relationship in the future. Consequently, the juvenile court could reasonably find that at the time of the jurisdictional hearing, L.K. was at substantial risk of serious physical harm due to domestic violence between her parents. The jurisdictional findings pertaining to domestic violence are therefore supported by substantial evidence.

### D.     Father's Alcohol Abuse

Father argues that the jurisdictional findings relating to his alcohol abuse should be reversed because: (1) the evidence does not demonstrate he "was an alcohol abuser [ ]"; and (2) "[e]ven if [father] did abuse alcohol, no nexus existed between his alcohol use and his ability to properly care for [L.K.]" We address each contention in turn below.

First, although not entirely clear, father appears to contend the record does not reflect he abused alcohol because the evidence does not meet the criteria for a finding of "substance abuse" set forth in *In re Drake M.* (2012) 211 Cal.App.4th 754, 766. In support of his contention, father emphasizes that he denied drinking alcohol daily, and that L.K. "acknowledged he was able to stop drinking when [her] paternal grandparents came to the home." For the reasons discussed below, we disagree with his argument.

We acknowledge that in *In re Drake M.*, *supra*, 211 Cal.App.4th at p. 766, the appellate court held that "a finding of substance abuse for purposes of section 300, subdivision (b)[ ] must be based on evidence sufficient to (1) show that the parent or guardian at issue ha[s] been diagnosed as having a current

substance abuse problem by a medical professional or (2) establish that the parent or guardian at issue has a current substance abuse problem as defined in the DSM-IV-TR."[3] Several other courts, however, have disagreed with this holding, and rejected the notion that a medical professional's diagnosis or satisfaction of the criteria set forth in DSM-IV-TR is required to support a finding that a parent has a substance abuse problem warranting jurisdiction under section 300, subdivision (b). (See, e.g., *In re Rebecca C.* (2014) 228 Cal.App.4th 720, 726; *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1218.)

In any event, we conclude the record contains sufficient evidence to support a finding that father suffers from a substance abuse problem based on the criteria set forth in *In re Drake M.*

---

[3] "The full definition of 'substance abuse' found in the DSM-IV-TR describes the condition as '[a] maladaptive pattern of substance use leading to clinically significant impairment or distress, as manifested by one (or more) of the following, occurring within a 12-month period: [¶] (1) recurrent substance use resulting in a failure to fulfill major role obligations at work, school, or home (e.g., repeated absences or poor work performance related to substance abuse; substance-related absences, suspensions, or expulsions from school; neglect of children or household)[; ¶] (2) recurrent substance use in situations in which it is physically hazardous (e.g., driving an automobile or operating a machine when impaired by substance use)[;¶] (3) recurrent substance-related legal problems (e.g., arrests for substance-related disorderly conduct)[; and ¶] (4) continued substance use despite having persistent or recurrent social or interpersonal problems caused or exacerbated by the effects of the substance (e.g., arguments with spouse about consequences of intoxication, physical fights)." (*In re Drake M.*, *supra*, 211 Cal.App.4th at p. 766.)

11

Mother, L.K., and J.R. each reported father drinks large quantities of beer daily, and that he will drink constantly from when he wakes in the morning to when he goes to sleep or passes out in the evening. L.K. and J.R. reported they have seen father drink a 30-pack of beer in one day. Mother stated father "'has always pretty much been an alcoholic[,]'" and that he has been drinking in this manner since 2004. Before then, he was arrested for driving under the influence of alcohol/drugs in 1999, 2000, and 2001.

The evidence shows father became verbally aggressive and physically violent toward L.K. and mother when drunk. Mother reported that by 4:00 p.m. each day, father was intoxicated; at that point, she "'knew to stay away from him[ ]'" because "'[h]e would become combative, regularly[ ]'" , and would regularly "yell[ ] and scream[ ]" at her or "becom[e] physical with her." She also stated that when father was drunk, "he would always do things to be mean [to her and L.K.,] like lock them out of the house or put [hair removal product] in her hair while [she] was sleeping to make her hair fall out."

Similarly, L.K. reported father "got angry very easily when intoxicated[,]" and that "it was normal for . . . father to drink beer throughout the day and be drunk in the evening[,]" at which point "[i]t usually took very little to anger him." L.K. stated "she is very afraid of . . . father when he is drinking." Indeed, as noted above, in October 2020, she "panicked" when father took her cell phone away because she felt "her cell phone is the only way she can call for help if . . . father gets too intoxicated." Further, in recalling occasions where father was violent, mother and L.K. observed father was drunk at the time of those incidents. In

12

addition, J.R. stated she "is scared that [f]ather w[ill] kill [L.K.] when he gets drunk one night."

The evidence thus adequately supports a finding that father's alcohol use satisfied several of the DSM-IV-TR categories referenced in *In re Drake M.*, namely: (1) "'recurrent substance use in situations in which it is physically hazardous'"; (2) "'recurrent substance-related legal problems'"; and (3) "'continued substance use despite having persistent or recurrent social or interpersonal problems caused or exacerbated by the effects of the substance[.]'" (*In re Drake M.*, *supra*, 211 Cal.App.4th at p. 766.) Accordingly, substantial evidence supports the juvenile court's finding that father suffers from a substance abuse problem to justify jurisdiction under section 300, subdivision (b).

Next, father contends the juvenile court erred by sustaining the alcohol abuse allegations because "no nexus existed between his alcohol use and his ability to properly care for [L.K.]" or "the physical abuse alleged by [L.K.]" In support of his contention, he attempts to analogize the facts of this case to those in *In re Drake M.*, *supra*, 211 Cal.App.4th 754 and *In re David M.* (2005) 134 Cal.App.4th 822. Again, we do not agree with his argument.

In *In re Drake M.*, *supra*, 211 Cal.App.4th 754, the appellate court reversed the jurisdictional finding based on the father's marijuana use because the child's physical needs were being met, "[t]here was no evidence or even allegations of abuse in the home[,]" the father "had been employed for many years[,]" and "[t]here was no evidence showing that [the child] was exposed to marijuana, drug paraphernalia[,] or even secondhand marijuana smoke." (*Id.* at pp. 768-769.) On those facts, the court held the Department "failed to show that there was any link

13

between [the] father's usage of medical marijuana and any risk of serious physical harm or illness to [the child.]" (*Id.* at p. 769.)

Similarly, in *In re David M.*, *supra,* 134 Cal.App.4th 822, the appellate court reversed the jurisdictional finding concerning the mother's marijuana use because "the evidence of [the] mother's . . . substance abuse problems . . . was never tied to any actual harm to [her children] or to a substantial risk of serious harm." (*Id.* at p. 829.) The appellate court noted that although mother used marijuana on at least one occasion while pregnant with her younger child, the evidence did not indicate the child consequently suffered any harm. (*Ibid.*) The appellate court also emphasized "[t]he evidence was uncontradicted that [the older child] was healthy, well cared for, loved, and that [his parents] were raising him in a clean, tidy home." (*Id.* at p. 830.)

Both of these cases are distinguishable from the present case. Here, as discussed above, the evidence is sufficient to support a finding that father's alcohol abuse caused him to frequently become violent with L.K., thereby causing her physical harm and compromising her safety. The evidence also demonstrates father's alcohol abuse facilitated his frequent infliction of domestic violence on mother in L.K.'s presence, which further exposed L.K. to risk of harm and jeopardized her safety. Therefore, in contrast with the evidence in *In re Drake M.* and *In re David M.*, the record in this case shows that due to his alcohol abuse, father did not "adequately supervise or protect [L.K.]" while she was in his care (§ 300, subd. (b)) and placed her at substantial risk of serious physical harm.

In sum, for the reasons discussed above, we conclude the juvenile court did not err by sustaining the jurisdictional findings pertaining to father's alcohol abuse.

## II.    Father's Challenges to the Dispositional Order

### A.    Removal

#### 1.    Legal Principles and Standard of Review

Pursuant to section 361, subdivision (c)(1), the juvenile court may remove a child from the custody of a parent if it finds, by clear and convincing evidence, "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." "A juvenile court's removal order at a disposition hearing will be affirmed on appeal if it is supported by substantial evidence." (*In re V.L.* (2020) 54 Cal.App.5th 147, 154.)

Our Supreme Court recently clarified the nature of substantial evidence review applicable to a challenge to the sufficiency of the evidence supporting a finding made under the clear and convincing evidence standard. It held: "[A]n appellate court must account for the clear and convincing standard of proof when addressing a claim that the evidence does not support a finding made under this standard. When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give

appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011-1012 (*O.B.*).)

### 2. Analysis

As an initial matter, we note that in challenging the removal order, father does not dispute the sufficiency of the evidence supporting the juvenile court's finding that the first prong of the two-prong test set forth above has been satisfied. In any event, we note that based on the evidence discussed in section I, *ante*, "the record . . . contains substantial evidence from which [the juvenile court] could have found it highly probable" (*O.B.*, *supra*, 9 Cal.5th at p. 1011) that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of [L.K.] if [she] were returned" to father. (§ 361, subd. (c)(1).)

Instead, father solely contends the removal order is unsupported by substantial evidence because "[r]easonable alternatives to removal existed, such as unannounced home visits by the [D]epartment, conjoint therapy, preservation services, and wraparound services for the family." For the reasons discussed below, we are not convinced by his argument.

First, father does not explain how his suggested alternatives to removal would have been sufficient to protect L.K.'s physical safety if she were returned to him. We acknowledge that, in making his argument, father points out he was granted sole physical custody of L.K. in 2010, that he has "held a job" and "provided for [L.K.,]" and that mother left the home in August 2020. However, he does not spell out—and we

16

cannot discern—how these facts demonstrate his proposed alternatives to removal would adequately protect L.K. from harm if she were to remain in his custody. The conclusory nature of his argument alone is sufficient to warrant its rejection.

In any event, we conclude substantial evidence supports the juvenile court's finding that the second prong of the test set forth in section 361, subdivision (c)(1) has been satisfied. In addition to denying that he physically abused L.K., father also "denied ongoing physical or verbal violence" with mother. He also "denie[d] having an alcohol problem[,]" "denie[d] the allegations . . . by [mother] that he drinks alcohol all day every day[,] and "denie[d] that he drinks to intoxication." Moreover, when asked to identify services that may be beneficial to the family in addressing the issues bringing it to the Department's attention, father "did not offer any suggestions on services that might benefit him."

In sum, as discussed in section I, *ante*, the record reflects father has exhibited a pattern of violent behavior toward L.K. and mother, which is related to his alcohol abuse. Nevertheless, the evidence discussed above demonstrates father has yet to accept responsibility for his actions, recognize the impropriety of his conduct, or appreciate the extent to which his behavior has and will continue to negatively affect L.K.'s safety. Under these circumstances, the juvenile court "could have found it highly probable" (*O.B.*, *supra*, 9 Cal.5th at p. 1011) that "there are no reasonable means by which [L.K.'s] physical health can be protected without removing [her] from [her father's] physical custody." (§ 361, subd. (c)(1); see also *In re Cole C.* (2009) 174 Cal.App.4th 900, 918 [affirming finding that no reasonable means short of removal were available to protect the child where the

17

father failed to acknowledge the inappropriate nature of his abusive parenting techniques and disciplinary methods].)

## B.    Father's Participation in Services

### 1.    Legal Principles and Standard of Review

When a child is declared a dependent of the court under section 300, the juvenile court "may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child[.]" (§ 362, subd. (a).) Moreover, "[t]he juvenile court may direct any reasonable orders to the parents . . . of the child . . . as the court deems necessary and proper . . . . That order may include a direction to participate in a counseling or education program, including, but not limited to, a parent education and parenting program . . . . The program in which a parent . . . is required to participate shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by [s]ection 300." (§ 362, subd. (d).)

"'The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion.'" (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311.)

### 2.    Analysis

Father contends "[t]he juvenile court's dispositional orders requiring [him] to participate in a six-month drug program, 52-week domestic violence class, and individual counseling should be reversed as an abuse of discretion." In support of his contention, he largely reiterates the same arguments raised in support of his

challenge to the jurisdictional findings. We addressed these arguments in section I, *ante*, and based on the evidence discussed therein conclude the juvenile court did not abuse its discretion by ordering father to participate in the challenged services.

### C.    Visitation

Lastly, father contends the visitation order must be reversed. He notes that while the juvenile court granted him one-hour monitored visits in a therapeutic setting, it "failed to specify the frequency of visits" and instead "order[ed] visits were 'going to be dictated by the availability of the therapist.'" He argues that, in so doing, "[t]he court violated the separation of powers doctrine" by improperly "delegat[ing] to the therapist the authority to determine when visits would begin and thereafter take place." In response, the Department contends father forfeited his challenge to the visitation order "because he not only failed to object to it [in the juvenile court,] but . . . in fact . . . acquiesced to the order[.]" We agree with the Department.

"'"An appellate court will ordinarily not consider procedural defects or erroneous rulings in connection with relief sought or defenses asserted, where an objection could have been, but was not, presented to the lower court by some appropriate method." [Citations.]' This is the general rule, because any other rule would allow a party to deliberately stand by in silence and permit the proceedings to reach a conclusion in which the party could acquiesce if favorable and avoid if unfavorable." (*In re G.C.* (2013) 216 Cal.App.4th 1391, 1398.) Where a parent fails to assert in the juvenile court that a visitation order improperly delegates the court's authority to determine whether visitation will occur to a

third-party, he or she forfeits the right to raise the issue on appeal. (See *Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 685-686.)

At the dispositional hearing, the juvenile court granted father monitored visits in a therapeutic setting, with a minimum duration of one hour per visit. Subsequently, father's counsel "lodge[d] an objection to the [juvenile] court setting monitored visits in a therapeutic setting for one hour." Immediately thereafter, father's counsel asked the court to clarify its order by inquiring whether "there [was] a minimum for how often [father's] visits are to occur[.]" The juvenile court replied that it "did not indicate the frequency because . . . [the visits] have to be in a therapeutic setting[,]" and therefore the court "assum[ed]" that component of visitation would be "dictated by the availability of the therapist." In response, father's counsel stated: "Understood."

The record therefore reflects that, upon the juvenile court's pronouncement of the visitation order, father's counsel raised a general objection to the order without specifying the grounds upon which it was based. It is well-settled, however, that "[g]eneral objections are insufficient to preserve issues for review. [Citation.]" (*In re E.A.* (2012) 209 Cal.App.4th 787, 790.) Moments later, in response to father's counsel's request for clarification, the juvenile court expressly stated it was not going to specify the minimum frequency of father's visits, and stated the occurrence of visits would instead be contingent on the therapist's availability. At that point, however, father's counsel did not raise any additional objections or otherwise argue that the order resulted in an improper delegation of the juvenile court's visitation authority, despite having ample opportunity to

20

do so. Indeed, as the Department points out, father's counsel apparently acquiesced to the visitation order.

On this record, we conclude father forfeited his challenge to the juvenile court's visitation order. Accordingly, we decline to consider his arguments regarding this issue on the merits.

## DISPOSITION

The jurisdictional and dispositional orders are affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

CURREY, J.

We concur:

WILLHITE, Acting P.J.

COLLINS, J.

21