Filed 6/7/13

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| In re G.C., JR., a Person Coming Under the Juvenile Court Law. | |
| BUTTE COUNTY DEPARTMENT OF EMPLOYMENT AND SOCIAL SERVICES, | C070086 |
| Plaintiff and Respondent, | (Super. Ct. No. J31399) |
| v. | |
| G.C., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Butte County, Tamara l. Mosbarger, Judge. Affirmed.

Catherine C. Czar, under appointment by the Court of Appeal, for Defendant and Appellant.

Bruce Alpert, County Counsel; and Kimberly Merrifield for Plaintiff and Respondent.

In this case, we address the issue of whether a party, by not objecting in the trial court, forfeits an objection to the failure to follow procedures related to an alternative

1

permanent plan for Indian children established by the Legislature -- tribal customary adoption -- which became operative on July 1, 2010. (Stats. 2009, ch. 287, § 12.)

Father, G.C., appeals a December 2011 order terminating his parental rights to the minor. He contends the juvenile court did not comply with Welfare and Institutions Code section 366.24[1] and ensure the minor's Indian tribe considered the appropriateness of a tribal customary adoption. The Children's Services Division of the Butte County Department of Employment and Social Services (the Department) initially conceded the claim, stating that because the social workers and the Indian child welfare expert did not address the issue of tribal customary adoption, the matter must be reversed and remanded to allow for proper consideration. We requested supplemental briefing. The Department now contends the issue is forfeited and any error was harmless. We agree.

We hold that to preserve claims related to the failure to follow the tribal customary adoption procedures, a parent must object on those grounds in the juvenile court. Here, father failed to object to those procedural errors. Further, any such errors were harmless here. Accordingly, we affirm the juvenile court's order.

## PROCEDURAL BACKGROUND

These proceedings commenced in August 2004. In September 2004, the court found the minor was a dependent child as described by section 300, subdivision (b) because of parents' ongoing drug use, father's filthy home and father's history of domestic violence. The minor was placed in a foster home with Cynthia N. in September 2004, where he has remained.

Mother is tribally affiliated; father is not. In March 2005, the Tyme Maidu Tribe, Berry Creek Rancheria (the Tribe) filed a notice of tribal intervention, in which it stated

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

the minor is a member of or eligible for membership in the Tribe and is the child of a member of the Tribe.

In April 2005, prior to the combined disposition and six-month review hearing, the Tribe filed a "Tribal Resolution for Preferred Placement," which designated Cynthia N.'s home as a "Designated Indian Home" that met the Tribe's "prevailing social and cultural standards and protects the best interests of Indian children." In the resolution, the Tribe specifically noted the foster family "is an Indian Family[,] therefore the Indian Child will stay connected to his tribe and culture and have his special needs met." Father opposed this placement. Father wanted the minor to be placed with father's relative. The juvenile court made dispositional findings and orders and set the case for a contested placement hearing.

The contested placement hearing was held in May 2005. During the hearing, the court determined the minor to be an Indian child within the meaning of the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.). As to placement, the court determined it was not in the minor's best interest to deviate from the Tribal preference. Accordingly, the minor remained with Cynthia N.

Reunification services for both parents were terminated at the 12-month review hearing in October 2005, and the matter was set for a section 366.26 hearing.

The selection and implementation report for the February 2006 section 366.26 hearing indicated Cynthia N. preferred a permanent plan of adoption, but was willing to defer to the wishes of the Tribe. The Department recommended a permanent plan of guardianship, with Cynthia N. being declared the legal guardian. This plan was consistent with the Tribe's preference at that time as reflected in the selection and implementation report and the Indian child welfare expert's report. In February 2006, Cynthia N. was declared the legal guardian of the minor and the dependency proceedings were terminated.

On July 1, 2010, section 366.24 became operative. The statute establishes tribal customary adoption as an alternative permanent plan for Indian children. Amendments to the California Rules of Court addressing tribal customary adoption also became effective in July 2010. (Cal. Rules of Court, rule 5.708(g)(5), (g)(6), 5.715(b)(5), 5.720(b)(4), 5.722(b)(3), 5.725(d)(1), (d)(2)(C)(vi), (d)(8)(C), (e)(2), (e)(4).)

In April 2011, the Department moved for a change in court order, requesting that the dependency proceedings be reinstated and a new section 366.26 hearing be set, because Cynthia N. was planning to move out of state and wanted to adopt the minor. Father was not present at the hearing. Mother stated she was willing to let Cynthia N. adopt the minor, because the minor was happy and content with Cynthia N. and she just wanted the best for the minor. The court resumed dependency jurisdiction and set the matter for another section 366.26 hearing.

In the October 20, 2011 selection and implementation report, the Department recommended that the minor be ordered into a permanent plan of adoption and parental rights be terminated. According to the report, the Tribe had previously stated it would not object to adoption if mother were willing to relinquish her parental rights. Although mother had indicated she was willing to relinquish her parental rights, at the time the selection and implementation report was written, she had not pursued relinquishment.

An Indian child welfare expert, Angelina Arroyo, wrote a report dated October 28, 2011. She interviewed Terilyn Steele, the ICWA director of the Berry Creek Rancheria, who told her that the Tribe supported the current placement, but did not support forced termination of parental rights and had not had contact with mother so as to justify support of adoption.[2]

---

[2] Arroyo also noted in her report that father had been inactive and uninvolved.

The section 366.26 hearing was ultimately heard in December 2011. Father was present and represented by counsel.

By the time of the hearing, the minor was nine years old and had been living in his current home for seven years. He was happy living there and fully integrated with his three step siblings, who had all been adopted by the foster parents. The minor wanted to be adopted by his foster parents. The mother and father had not sought contact with the minor. The minor testified that he had not had any visits with either parent in four years.[3] The Department recommended a permanent plan of adoption and termination of parental rights. Father objected to the plan of adoption, testifying the only way "they're going to get my custody rights is if somebody puts a bullet in me."[4]

Arroyo testified she had now been informed mother was going to relinquish her parental rights. Based on that relinquishment, the Tribe supported a plan of adoption with Cynthia N. Arroyo also testified that based on her review of the records and mother's relinquishment, continued custody of the children by the biological parents would result in serious emotional and physical harm to the minor. Arroyo had not discussed with the Tribe what its view would be if father did not support adoption. However, even after Arroyo learned father opposed termination of his parental rights, it was still her recommendation that parental rights be terminated and that adoption be

---

[3] Although the minor testified he had not seen either parent in four years, the selection and implementation report indicated that the minor had not seen father in four years or mother for two and a half years. The report indicated that the reason is that the parents did not seek to contact the minor.

[4] Father repeatedly testified the only way his parental rights would be terminated was "over [his] cold dead body" until the juvenile court admonished him to be careful of his language in that his testimony was being considered by the court as a threat to the foster family.

selected as the permanent plan. Father did not mention the need to consider tribal customary adoption.

Mother voluntarily relinquished her parental rights. Based on the evidence, including Arroyo's testimony, the court found beyond a reasonable doubt "that continued custody of the child by the parents is likely to result in serious emotional or physical damage to the child." Thus, father's parental rights were terminated. The court also found by clear and convincing evidence it was likely the minor would be adopted. Accordingly, adoption was selected as the permanent plan. About one week later, the Tribe withdrew its intervention, stating that the Tribe "does not intervene in cases involving an Indian Mother Relinquishing her Parental Rights Voluntarily to a Native Home."

## DISCUSSION

On appeal, father contends the order terminating his parental rights must be reversed. For the first time, father complains that the juvenile court failed to comply with section 366.24 and ensure the Tribe considered whether tribal customary adoption was the appropriate permanent plan for the minor. In the face of the Department's concession that the error required reversal, we requested supplemental briefing on: (1) whether the issue was forfeited for failure to raise it in the trial court, and (2) whether any error was harmless. Both parties responded.

We conclude that the failure to object to deficiencies in the selection and implementation report or errors at the section 366.26 hearing related to the tribal customary adoption procedures forfeits those issues on appeal. Furthermore, even if the claims were not forfeited, any error here is harmless.

### A. Forfeiture

At a section 366.26 hearing, the juvenile court determines a permanent plan of care for a dependent child. (§ 366.26, subd. (b); *In re Casey D.* (1999) 70 Cal.App.4th 38, 50.) The general statutory preference is to terminate parental rights and place the child

6

for adoption. (§ 366.26, subd. (b)(1); *In re Celine R.* (2003) 31 Cal.4th 45, 53.) However, the Legislature established tribal customary adoption as an alternative permanent plan for Indian children, which became operative July 1, 2010. (Stats. 2009, ch. 287, § 12.) Tribal customary adoption is an "adoption by and through the tribal custom, traditions, or law of an Indian child's tribe. Termination of parental rights is not required to effect the tribal customary adoption." (§ 366.24, subd. (a)(1).)

The procedures for tribal customary adoption are set forth both in statutes and rules of court. Whenever an assessment is ordered under section 366.26, "the assessment shall address the option of tribal customary adoption." (§ 366.24, subd. (b).) At the section 366.26 hearing, the juvenile court must find that "the agency consulted with the child's tribe and the tribe was actively involved in the development of the case plan and plan for permanent placement, including consideration of whether tribal customary adoption is an appropriate permanent plan for the child . . . ." (Rule 5.725(d)(8)(C).) If the court finds that the agency did not consult with the child's tribe, it "must order the agency to consult with the tribe, unless the court finds that the tribe is unable, unavailable, or unwilling to participate." (Rule 5.725(d)(8)(D).)

Father belatedly notes that these requirements were not met. Specifically, father complains the selection and implementation report did not indicate the Department had consulted with the Tribe about tribal customary adoption and did not address the option of tribal customary adoption. And, the juvenile court did not find the Department had consulted with the Tribe about tribal customary adoption, did not order the Department to do so, and did not consider the appropriateness of tribal customary adoption as a permanent plan. Father, however, did not object to any of these deficiencies at the December 2011 section 366.26 hearing.

" 'An appellate court will ordinarily not consider procedural defects or erroneous rulings in connection with relief sought or defenses asserted, where an objection could have been, but was not, presented to the lower court by some appropriate method.'

7

[Citation.]" (*In re Dennis H*. (2001) 88 Cal.App.4th 94, 98.) This is the general rule, because any other rule would allow a party to deliberately stand by in silence and permit the proceedings to reach a conclusion in which the party could acquiesce if favorable and avoid if unfavorable. (*In re Riva M*. (1991) 235 Cal.App.3d 403, 412 (*Riva M*.), citing *In re Christian J*. (1984) 155 Cal.App.3d 276, 279.) The forfeiture doctrine has been applied in dependency proceedings in a wide variety of contexts, including cases involving failures to obtain various statutorily required reports (*In re Dakota S*. (2000) 85 Cal.App.4th 494, 502); failure to object to the adequacy of an adoption assessment (*In re Urayna L.* (1999) 75 Cal.App.4th 883, 885-886 (*Urayna L.*); *In re Aaron B*. (1996) 46 Cal.App.4th 843; *In re Crystal J*. (1993) 12 Cal.App.4th 407, 411-412); failure to request an alternative placement (*In re Daniel D*. (1994) 24 Cal.App.4th 1823, 1830-1831); and failure to require expert testimony and to make the required findings using the beyond-a-reasonable-doubt standard as mandated by ICWA (*Riva M*., *supra*, 235 Cal.App.3d at p. 411).

This is also an appropriate case to apply the forfeiture rule. The provisions regarding tribal customary adoptions are part of a state statutory scheme intended to allow Indian children the permanence offered by adoption without disrupting their ability to fully participate in tribal membership. (*In re H.R*. (2012) 208 Cal.App.4th 751, 760-761 (*H.R*.).) Thus, like in *Riva M*., the errors here do not involve the fundamental jurisdiction of the court to act, but rather are errors related to the procedural standards of the scheme. (*Riva M*., *supra*, 235 Cal.App.3d at p. 412.) The selection and implementation report was prepared and available to the parties well in advance of the properly noticed December 2011 section 366.26 hearing. A timely objection would have enabled the court to ensure the issue of tribal customary adoption was appropriately addressed and considered by the social worker and the Tribe. The objection would have further ensured that the court made the required findings. Instead of raising these procedural matters in the trial court, father now belatedly seeks to avoid a result that

8

turned out to be unfavorable. Accordingly, we will not consider this issue for the first time on appeal. (See *Urayna L., supra,* 75 Cal.App.4th at p. 886.) We therefore conclude father forfeited the right to complain that his parental rights had been terminated without an adequate selection and implementation report or a finding of consultation regarding tribal customary adoption and consideration of it as required by section 366.24, subdivision (b). (See *Urayna L.*, *supra*, 75 Cal.App.4th at p. 886; *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1339.)

### B. Harmless Error

Even if the issue was not forfeited, any failure to address tribal customary adoption and make the requisite findings here was harmless. One of the purposes of ICWA is "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture." (25 U.S.C. § 1902.) It is presumptively in "the best interests of the child to retain tribal ties and cultural heritage and in the interest of the tribe to preserve its future generations." (*In re Desiree F*. (2000) 83 Cal.App.4th 460, 469.) Thus, the policy underlying both the state and federal statutes regarding Indian children is " ' "that, where possible, an Indian child should remain in the Indian community . . . ." ' (*Mississippi Choctaw Indian Band v. Holyfield* [ (1989) 490 U.S. 30,] 37." (*In re W.B., Jr*. (2012) 55 Cal.4th 30, 48; see § 224, subd. (a)(2); 25 U.S.C. § 1902.)

Because "the termination of parental rights will normally cause detriment to an Indian child by interfering with his or her tribal connections" (*H.R.*, *supra*, 208 Cal.App.4th at p. 763), tribal customary adoption is intended to further the underlying federal and state policies by providing "the minor with the same stability and permanence of traditional adoption without terminating parental rights" (*ibid*). With tribal customary adoption, "an Indian child's interest in stability and permanence

9

no longer provides a counterbalance to the child's interest in maintaining his or her tribal connection." (*Ibid*.) Consideration of tribal customary adoption is not required under ICWA. Rather, consideration of tribal customary adoption is required by state law, enacted pursuant to ICWA's authorization to states to provide "a higher standard of protection . . . than the rights provided under [the ICWA]." (25 U.S.C. § 1921; see *In re S.B.* (2005) 130 Cal.App.4th 1148, 1158.) "[A]ny failure to comply with a higher state standard, above and beyond what the ICWA itself requires, must be held harmless unless the appellant can show a reasonable probability that he or she would have enjoyed a more favorable result in the absence of the error. (Cal. Const., art. VI, § 13; *People v. Watson* (1956) 46 Cal.2d 818, 836.)" (*S.B.*, *supra*, 130 Cal.App.4th at p. 1162.) Father has not met this burden.

The minor's Native American heritage derived solely through mother. Upon being advised that mother would relinquish her parental rights, the Tribe supported the plan of adoption by Cynthia N. When mother voluntarily relinquished her parental rights, the Tribe withdrew its intervention in the case, stating it "does not intervene in cases involving an Indian Mother Relinquishing her Parental Rights Voluntarily to a Native Home." There is nothing in the record which suggests the Tribe was concerned with the non-Indian father's ability to maintain his relationship with the minor. Nor is there any evidence that maintaining the non-Indian father's parental relationship with the minor would protect the minor's interest in maintaining his tribal connection. In fact, the record suggests father's relationship was of no consequence to the minor's tribal connection.

By contrast, Cynthia N. has significant tribal ties. Although she herself is not Native American, she was raised with half siblings with Native American heritage who were tribally affiliated, and she understands the importance of the tribal culture. Cynthia N. has two children who are Maidu, their father being a Maidu member who lives on the reservation. The Tribe designated the foster family an Indian family, and

10

found the home was a placement that met the Tribe's "prevailing social and cultural standards" and would enable the minor to remain "connected to his tribe and culture." That is, Cynthia N.'s home was better able to "reflect the unique values of Indian culture" and impart them to the minor. (25 U.S.C. § 1902.) Furthermore, in this case, it was adoption by Cynthia N., rather than maintenance of the parental relationship with the non-Indian parent, which best preserved the minor's tribal relationship.

Mother voluntarily relinquished her parental rights specifically to permit Cynthia N. to adopt the minor. The nine-year-old minor had been living with his foster family for seven years, was happy there and was excited to be adopted by them. He had not had visits with father in approximately four years. While the minor was interested in future contact with his parents, he was satisfied having Cynthia decide whether that could happen. The minor also had no interest in speaking with father before parental rights were terminated.

Tribal customary adoption is only an option when the child's tribe identifies it as an option. (§ 366.24, subd. (c)(6); *H.R.*, *supra*, 208 Cal.App.4th at pp. 764-765.) Here, the Tribe did not identify it as an option. Although the record does not reflect that the Tribe discussed tribal customary adoption with the social worker, the record does reflect that the Tribe was involved in the selection of the appropriate permanent plan for the minor, and, upon voluntary relinquishment of mother's parental rights, the Tribe supported adoption by Cynthia N. We have no reason to speculate that the Tribe was unaware of tribal customary adoption as an alternative permanent plan. Further, at no time did the Tribe express any concern over the status of father's parental rights. The Indian child welfare expert also recommended adoption. The fact that father did not voluntarily relinquish his rights did not support adoption and did not want his rights terminated did not change the expert's recommendation.

On this record, father has not shown a reasonable probability that compliance with the procedural requirements of tribal customary adoption would have resulted in

11

an outcome more favorable to him.  Thus, we conclude the errors complained of are harmless.

## DISPOSITION

The order of the juvenile court is affirmed.


                                                                              _____MURRAY_____, J.


We concur:


_____BLEASE_____, Acting P. J.


_____MAURO_____, J.