Filed 7/31/13  In re P.R. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re P.R., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>APRIL S.,<br><br>    Defendant and Appellant. | G048003<br><br>(Super. Ct. No. DP020206)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Jacki C. Brown, Judge.  Affirmed.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Nicholas S. Chrisos, County Counsel, Karen L. Christensen and Julie J. Agin, Deputy County Counsel, for Plaintiff and Respondent.

Linda S. Rhem for Minor.

The trial court terminated appellant April S.'s (mother) parental rights to now almost four-year-old P.R. under Welfare and Institutions Code section 366.26 (all further statutory references are to this code). Mother is an enrolled member of the Cocopah tribe and P.R. was eligible for enrollment. Mother appealed, raising a number of issues, all centered on her argument the court failed to apply the Indian child exception to adoption. As discussed below, we reject mother's claims the court abused its discretion and that her lawyer or minor's lawyer rendered ineffective assistant of counsel. Mother failed to make the arguments in the trial court she now makes here for the first time, and furthermore the record demonstrates the court made extensive efforts to involve the tribe in the resolution of this case.

FACTS

P.R. was taken into protective custody when she was just short of her first birthday. A month or more earlier, mother had left her with a step-maternal grandmother with no provision for support or consent for care. The whereabouts of the parents was unknown. P.R.'s brother, B.R., had previously been placed into protective custody. The parents, having failed to comply with the case plan, B.R.'s case was scheduled for a selection and implementation hearing under section 366.26 three months hence. The Orange County Social Services Agency (SSA) reported prior contacts with the family began six years earlier. Both parents had prior criminal histories. Mother and father both had unresolved substance abuse issues and a history of domestic violence. Mother had been diagnosed as bipolar and had been hospitalized about six times. Mother had lost her parental rights to three of her four children.

The maternal step-grandmother's former girlfriend, Q.C., requested she be considered for P.R.'s placement. P.R. was placed in her home. Q.C. provided the social

2

worker with P.R.'s birth certificate and mother's tribal membership identification card, showing mother was one-half Cocopah.

Presumably based on an earlier investigation in connection with B.R., SSA was aware that mother was enrolled in the Cocopah tribe and the initial SSA report documented communications between the social worker and the tribe. At the time of the detention hearing, the court found that the Indian Child Welfare Act (ICWA) might apply and ordered SSA to continue to investigate the child's possible American Indian heritage and to provide notice to the Cocopah tribe. The court authorized SSA to release P.R. to a relative or suitable adult. SSA reported the social worker had spoken with a representative of the Cocopah tribe and informed him that P.R.'s mother was an enrolled member of the tribe. Shortly thereafter the appropriate notice was sent to tribal council and the Secretary of the Interior, and the social worker left messages for the tribal administrator to call her.

SSA also initiated an application to enroll P.R. into the Cocopah tribe and gave notice of the scheduled child custody proceeding to the Secretary of the Interior, Bureau of Indian Affairs, and to the Cocopah tribe's ICWA representative. Thereafter, the social worker left a message with the attorney for the Cocopah tribe regarding possible placement of P.R. with a Navaho family. At the next scheduled hearing, the court continued the trial because of the potential eligibility of P.R. under the ICWA. Later SSA received an e-mail from the tribal attorney, LaNita Plummer, advising that the tribe elected not to intervene. The message acknowledged that P.R. had been placed with a person selected by her mother.

Phil Powers, an Indian Expert Witness appointed with court approval, recommended, after consulting with, among others, the tribal attorney, that: (1) P.R. be removed from her mother and father's custody; (2) no reunification services be given to the parents; and (3) a section 366.26 hearing be scheduled "to determine a permanent

3

plan for the child." The court found the ICWA applied, proper notice was given to the Cocopah tribe, the tribe did not wish to intervene, and SSA had made active efforts to avoid breakup of an Indian family. P.R. was doing well and her caretaker was willing to keep her permanently.

Later, the Cocopah tribe sent a letter indicating that P.R. was now enrolled in the tribe, but also informed SSA her enrollment would cease once mother's parental rights were terminated. However, P.R. could once again apply for enrollment once she reached majority. The court terminated reunification services, which had been extended to the father, and determined adoption would be the permanent plan. The court then set the matter for a permanency hearing. And, based on the declaration from the Indian expert, found that SSA had made active efforts not to break up an Indian family.

During the section 366.26 hearing, SSA's counsel stated he had spoken to the social worker for the tribe and the tribe did not wish to intervene or to participate in the hearing. The court found P.R. adoptable and terminated parental rights.

DISCUSSION

Mother argues the court erred in terminating her parental rights because this resulted in P.R. losing her status as a member of the Cocopah tribe. She claims that such a loss was detrimental to P.R. because section 366.26, subdivision (c)(1)(B)(vi)(I) provides that "the court shall terminate parental rights unless either of the following applies: [¶] . . . [¶] (B) The court finds a compelling reason for determining that termination would be detrimental to the child due to one or more of the following circumstances: [¶] . . . [¶] (vi) The child is an Indian child and there is a compelling reason for determining that termination of parental rights would not be in the best interest of the child, including, but not limited to: [¶] (I) Termination of parental rights would

4

substantially interfere with the child's connection to his or her tribal community or the child's tribal membership rights."

Mother acknowledges the burden is on her to show that termination of parental rights would be detrimental to the child under this exception. (*In re Fernando M.* (2006) 138 Cal.App.4th 529, 534.) She also acknowledges that the trial court's finding of a statutory exception to adoption is reviewed under the substantial evidence rule. (*In re S.B.* (2005) 130 Cal.App.4th 1148, 1161-1162; *In re Autumn H.* (1994) 27 Cal.App.4th 567, 576) Here substantial evidence supports the court's finding that, in spite of the temporary loss of tribal membership, P.R.'s best interest required that she remain with the woman who had cared for her since August 2010 and who was probably the only mother the child had ever known.

There is no doubt that the law favors maintaining the integrity of membership in Indian tribes. But where, as here, the tribe declined the opportunity to assist the court in maintaining P.R.'s relationship with the tribe and P.R. has been in a loving relationship with the woman who is likely to adopt her, the best interest of P.R. is served by permitting the adoption to proceed. P.R. considered Q.C. to be her "'mommy'" and was thriving in Q.C.'s care. No known relative or other Indian person was identified as satisfying ICWA requirements for permanent placement. Powers, the Indian expert witness, stated that the tribe had agreed P.R. could be placed with a non-Indian. A representative of the tribe advised the social worker the tribe did not "feel that it is in the child's best interest to remove her from her current placement." And that the tribe was "not planning on intervening on this case, and the child is better off where she is currently placed." Under these circumstances, mother's counsel properly submitted on the proposed findings and orders. We therefore reject mother's contention that the lawyer was ineffective in her representation of her. We also reject, based on the record as

5

outlined above, claims that no active efforts had been made to avoid the breakup of the Indian family or that proper notice was not given to the tribe.

Mother also contends that the court erred in not considering "tribal customary adoption" as specified in section 366.24, subdivision (a). But neither mother nor the tribe asked the court to consider such an option. This is the same situation that confronted the court in *In re G.C.* (2013) 216 Cal.App.4th 1391. There, the appealing father argued, for the first time on appeal, that the court had failed to consult with the tribe about tribal customary adoption. The court noted had the objection been raised in the trial court, "[t]he objection would have . . . ensured that the court made the required findings. Instead of raising these procedural matters in the trial court, father now belatedly seeks to avoid a result that turned out to be unfavorable. Accordingly, we will not consider this issue for the first time on appeal." (*Id.* at p. 1399.)

The court in *In re G.C.* also noted that, even if the issue had not been forfeited, "any failure to address tribal customary adoption and make the requisite findings here was harmless." (*In re G.C., supra,* 216 Cal.App.4th at p. 1399.) So here it was obvious the tribe did not want to involve itself in the case and was satisfied that continued placement with Q.C. was in the child's best interest. Again, in light of this, we reject mother's argument her lawyer's failure to raise customary tribal adoption constituted inadequate representation.

6

DISPOSITION

The order is affirmed.

RYLAARSDAM, ACTING P. J.

WE CONCUR:


BEDSWORTH, J.


FYBEL, J.