Filed 5/16/22  In re Anayah C. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re ANAYAH C., a Person Coming Under the Juvenile Court Law. | B314072 |
| | (Los Angeles County Super. Ct. No. 21CCJP02256A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| DONYAE C., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Nichelle Blackwell, Judge.  Affirmed.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

———————————

Donyae C., the father of 14-year-old Anayah C., appeals the disposition order removing Anayah from his custody after the juvenile court sustained a petition pursuant to Welfare and Institutions Code section 300, subdivisions (a) and (b)(1),[1] finding Donyae had physically abused the child and was unable to provide her with appropriate care. Donyae contends the removal order should be reversed because a joint assessment report required by section 241.1 when a child appears to come within the description of section 300 (dependency) and sections 601 or 602 (delinquency) was not filed in Anayah's dependency case prior to the disposition hearing. He also contends the court's removal order was not supported by substantial evidence. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Delinquency Proceedings*

Anayah was arrested on October 27, 2020 after taking her paternal grandmother's car without permission.[2] When detained,

———————————

[1]    Statutory references are to this code unless otherwise stated.

[2]    Anayah's delinquency case is described in a report pursuant to section 241.1 filed in Anayah's dependency case on September 21, 2021. We grant the unopposed motion of the Los Angeles County Department of Children and Family Services

2

Anayah told the officers there was a gun (apparently Donyae's) in a backpack inside the car. Anayah was transported to the Beverly Hills police station. When contacted by the police, Donyae refused to pick her up. As a result, Anayah was taken to Eastlake Juvenile Hall. Anayah was eventually released to the home of her godparents (nonrelated extended family members), Lamar and Pamela W.

A delinquency petition was filed pursuant to section 602 on October 29, 2020 alleging Anayah had violated Vehicle Code section 10851, subdivision (a) (driving or taking a vehicle without consent), and Penal Code section 29610 (possession of a firearm by a minor). As of July 1, 2021 the petition had not yet been adjudicated. The case remained under investigation pursuant to Welfare and Institutions Code section 652. A pretrial conference scheduled for July 1, 2021 was continued to August 19, 2021. The record on appeal contains no additional information regarding the delinquency case.

2. *The Dependency Proceedings*

The Los Angeles County Department of Children and Family Services (Department) received a report on April 5, 2021 that Donyae had slapped Anayah while they were visiting relatives in Texas. The incident occurred during an argument about Anayah's online relationship with an adult woman who Donyae believed was attempting to sexually exploit Anayah.

The following week the Department received another referral after Donyae brought Anayah to a Kaiser Hospital emergency room, asking that she be placed on a psychiatric hold

to take judicial notice of this report, as well as the July 1, 2021 minute order indicating the matter was before the delinquency court on July 1, 2021 for a pretrial conference.

3

because she had said she wanted someone to kill her. The reporting party also indicated Anayah had tried to speak to Donyae about having been sexually assaulted by one of her Texas cousins, but Donyae would not listen to her. After waiting some time for Anayah to be seen for an evaluation, Donyae became agitated and decided they should come back in the morning. Anayah did not want to go with Donyae, and the two began to fight in the parking lot. Donyae grabbed Anayah in a headlock, ripped her shirt and hit her in the mouth, causing her to bleed and chipping a tooth. The caller also reported there were suspicions Anayah was being recruited for human trafficking.

Following the parking lot incident, Anayah was hospitalized at Del Amo Hospital pursuant to the Children's Civil Commitment and Mental Health Treatment Act of 1988 (§ 5585 et seq.) because of suicidal ideation. Interviewed at the hospital by a Department social worker, Anayah reported that her father disciplined her by hitting her with a belt and a piece of wood or punching her legs. Anayah also told the social worker she had an 18-year-old girlfriend in Connecticut but was no longer with her because of concerns about trafficking.

On April 26, 2021 the Department received yet another referral after Anayah, ready for discharge from the hospital, said she did not want to go home with Donyae, and Donyae stated he would not pick her up if she did not want to go home with him. Pamela W. agreed to take Anayah home with her.

Anayah was removed from Donyae and her mother, Ebony B., on May 11, 2021 and allowed to remain in the home of Lamar and Pamela W. On May 13, 2021 the Department filed a petition pursuant to section 300, subdivisions (a) and (b)(1), alleging that Donyae had physically abused Anayah in April 2021

4

by wrestling with her, pulling her by her shirt, ripping the shirt, and striking her in the face, chipping one of her teeth. In addition, the petition alleged, on prior occasions Donyae had "struck the child with belts and pieces of wood [and] struck the child's legs with the father's fists." The petition alleged an additional count pursuant to subdivision (b)(1) that Donyae was unwilling and unable to provide appropriate parental care and supervision of Anayah. A similar subdivision (b)(1) count was alleged as to Ebony.

At the detention hearing on May 18, 2021 the court found a prima facie showing had been made that Anayah came within section 300 and also found that allowing her to continue to reside in her parents' home was contrary to her welfare. Anayah continued to live with Lamar and Pamela W.

In interviews summarized in the jurisdiction/disposition report filed July 6, 2021, Anayah confirmed that Donyae physically disciplined her with his fists, tree switches, belts and a piece of wood when taking away her electronic devices failed to correct her behavior. She described herself as a "bad child" and said she was disciplined often. The frequency of the physical abuse increased when she turned 11 and met her 18-year-old friend through a teen chat application. Anayah reported that Donyae was also verbally abusive.

Ebony told the Department's investigator, although she and Donyae shared custody of Anayah, Donyae had been Anayah's primary caregiver since she was four years old. According to Ebony, Anayah was going through an identity crisis, describing herself as a lesbian. Ebony stated Donyae had made it clear "he was not ok with their daughter's identity." As for providing care for Anayah, Ebony said it was not that she did not

5

want to, but "'[t]he circumstances are not the most appropriate at this time.'" Ebony explained she had two younger children and, due to Anayah's behaviors and mental health issues, she did not have the space in her home to accommodate Anayah's needs.

Donyae denied to the investigator he used physical discipline with Anayah, insisting Anayah was lying. Regarding Anayah's sexual identity, Donyae explained he grew up in a religious background, was set in his beliefs and did not have to accept her sexuality, although he added he loved and cared for Anayah. Donyae reported he had found nude pictures and inappropriate text messages between Anayah and the adult female on Anayah's phone, which prompted his concern about sexual trafficking.

Discussing the altercation in the hospital parking lot, Donyae said he took Anayah to Kaiser that evening because he knew she needed help. She had stated she wanted to kill him, and he had received a call indicating Anayah had pushed her one-year-old cousin off a couch during a confrontation with the paternal grandmother. Donyae was tired and wanted to return to the hospital in the morning, rather than continuing to wait. As they were walking back to the car, Anayah became verbally abusive. As they were driving out of the parking lot, Anayah tried to jump out of the car. He reached over to grab her, which is when her shirt ripped. He denied punching Anayah or chipping her tooth.

Included as an attachment with the Department's jurisdiction/disposition report was a "241.1 WIC Report," dated June 28, 2021 and prepared and signed by the same social workers who had prepared the jurisdiction report. This 10-page document indicated Anayah's delinquency case was on calendar

6

for a section 241.1 joint assessment on June 28, 2021. (The report was prepared for that hearing, to take place in Department 241, located at the Inglewood Juvenile Courthouse, not Department 406 in the Edelman Children's Courthouse where Anayah's dependency case was being heard.)

In addition to providing background information concerning Anayah and her family, as well as details of the pending dependency case, the Department's section 241.1 report stated, "The youth has not been declared a WIC 300 dependent at this time. The matter is on calendar for Disposition in Dept. 406 on 7/14/2021." Immediately following this statement, the report concluded: "Please refer to the Probation Officer's 241.1 Report, which includes the joint assessment of the Multi-Disciplinary Team." That additional report was not included with the Department's jurisdiction/disposition report and was not filed in the dependency proceedings until September 21, 2021—two months after Anayah had been declared a dependent child of the juvenile court and ordered suitably placed.

3. *The Jurisdiction/Disposition Hearing*

At the joint jurisdiction/disposition hearing on July 14, 2021, Donyae's counsel argued Donyae was concerned for Anayah and believed, if she did not get more intensive services for her mental health issues, her volatile behavior would escalate. He requested Anayah be released to Donyae "with the Department assisting in getting Anayah any and all services she needs." Counsel added, "Father's unwillingness to accept the minor's sexual orientation is not the main issue in this case. . . . Father is worried about his daughter being sex-trafficked. No physical altercation ever stemmed from Father's inability to accept his daughter's identity."

Crediting Anayah's version of the parking lot incident and past forms of discipline, as detailed in the Department reports admitted into evidence, the juvenile court sustained all counts in the dependency petition. As to the additional subdivision (b)(1) counts, the court explained, "I think Anayah does have some mental health issues from which she suffers, and it could be at the hands of what this child has expressed about prior sexual abuse from relatives in her care who live in Texas. It could also be because the parents are not really able to address and able to help her deal with her identity. I see that the father is pretty blunt and pretty clear that he does not have to accept her sexual identity. And what this does is it only places the child at more risk of emotional harm because she does not have a supportive parent to help her work through these issues as she is growing up. And it is not helpful for a parent to say, oh, well, my religious background and beliefs do not allow me to accept it, and I don't have to accept it. Well, when the court reads that, the court finds that this is troubling, and therefore, the court does not have to accept the parent's request to have the child returned to the care of that parent when that parent is simply not going to work his way through the process of helping her with the sexual identity. . . . And so I think [counts] b-2 and b-3 are true. Both parents are not willing, they are not able to care for Anayah."

Turning to disposition the court declared Anayah a dependent child of the court, found by clear and convincing evidence it was necessary to remove her from the care and custody of her parents, ordered Anayah suitably placed[3] and

---

[3] Lamar and Pamela W. had asked several weeks earlier that Anayah be removed from their home because they could not

8

directed the Department to provide family reunification services for Donyae and Ebony, including parenting classes and individual counseling to address case issues, which for Donyae included appropriate discipline, child safety and protection and anger management. Each parent was allowed nine hours per week of monitored visitation with discretion in the Department to liberalize visitation.

The court made a Regional Center referral for Anayah and transferred the case to the special court handling cases involving the commercial exploitation of children (the DREAM court—Dedication to Restoration through Empowerment, Advocacy, and Mentoring—at Edelman's Children's Court).

## DISCUSSION

1. *Governing Law*

   a. *Section 241.1: dual status youths*

Section 241.1 applies when a child may be subject to the juvenile court's jurisdiction both as a dependent child under section 300 and as a ward of the court under sections 601 or 602. In that situation the county probation department and the child welfare services department are required to jointly develop a written assessment to "determine which status will serve the best interests of the minor and the protection of society," which is to be presented to the juvenile court with the petition filed on behalf of the child. (§ 241.1, subd. (a).) The elements of the required joint assessment are described in section 241.1, subdivision (b), and amplified by California Rules of Court, rule 5.512(d).[4] Unless

provide care consistent with her needs. She was in transitional shelter care at the time of the jurisdiction/disposition hearing.

[4] References to rules are to the California Rules of Court.

certain statutory requirements for designating a minor a "dual status child" are met, the juvenile court may not enter an order "to make a minor simultaneously both a dependent child and a ward of the court." (§ 241.1, subds. (d), (e).)

Rule 5.512(a)(1) requires the assessment be completed as soon as possible after the child comes to the attention of either the responsible child welfare agency or probation department. (See *In re Aaron J.* (2018) 22 Cal.App.5th 1038, 1055 [rule 5.512 establishes a more accelerated timeframe than section 241.1 for the preparation of the assessment and related report].) Rule 5.512(a)(4) provides, once a petition has been filed, "on the request of the child, parent, guardian, or counsel, or on the court's own motion, the court may set a hearing for a determination under section 241.1" and order the joint assessment report be made available to the interested parties, including the child and the child's parent or guardian. (See rule 5.512(f).) If the child is detained, the hearing on the joint assessment report must occur no later than 15 court days after the order of detention and before the jurisdiction hearing. (Rule 5.512(e).) At the hearing, "[a]ll parties and their attorneys must have an opportunity to be heard." (Rule 5.512(g).) The court must then make a determination regarding the appropriate status of the child and "state its reasons on the record or in a written order." (*Ibid.*)

Although section 241.1 mandates the filing of the joint assessment, the absence of a report does not deprive the juvenile court of jurisdiction. (*In re M.V.* (2014) 225 Cal.App.4th 1495, 1509.) In addition, a party forfeits any objection to the absence or untimely filing of a section 241.1 report by failing to object. (*Id.* at p. 1508 ["courts have repeatedly held that a party's failure to

object forfeits appellate review of the adequacy of—or the failure to prepare—mandatory assessment reports in juvenile proceedings"].)

　　b.　*Removal*

Section 300, subdivision (a), provides that dependency jurisdiction may be assumed if "[t]he child has suffered, or there is a substantial risk the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian.  For purposes of this subdivision, a court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian that indicate the child is at risk of serious physical harm."  "Nonaccidental" generally means a parent or guardian "acted intentionally or willfully."  (*In re R.T.* (2017) 3 Cal.5th 622, 629.)

Section 300, subdivision (b)(1), allows a child to be adjudged a dependent of the juvenile court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of the child's parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child . . . ."  A jurisdiction finding under section 300, subdivision (b)(1), requires the Department to prove three elements:  (1) the parent's or guardian's neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness.  (*In re L.W.* (2019)

11

32 Cal.App.5th 840, 848; *In re Joaquin C.* (2017) 15 Cal.App.5th 537; see *In re R.T.*, *supra*, 3 Cal.5th at p. 624 ["section 300(b)(1) authorizes dependency jurisdiction without a finding that a parent is at fault or blameworthy for her failure or inability to supervise or protect her child"].)

Although the court has sustained a dependency petition, before it may order a child's removal from the physical custody of a parent with whom the child was residing at the time the dependency proceedings were initiated, it must also find, by clear and convincing evidence, that the child would be at substantial risk of physical or emotional harm if returned home and there are no reasonable means by which the child can be protected without removal. (§ 361, subd. (c); *In re Anthony Q.* (2016) 5 Cal.App.5th 336, 347; *In re T.V.* (2013) 217 Cal.App.4th 126.) "The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re T.V.*, at pp. 135-136.)

In reviewing the propriety of a disposition order removing a child from a parent pursuant to section 361, in view of the requirement that the juvenile court make the requisite findings based on clear and convincing evidence, we "must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005 (*O.B.*); see *In re Nathan E.* (2021) 61 Cal.App.5th 114, 123 ["[i]n reviewing for substantial evidence to support a dispositional order removing a child, we 'keep[] in mind that the [juvenile] court was required to make its order based on the higher standard of clear and convincing evidence'"]; *In re V.L.* (2020)

12

54 Cal.App.5th 147, 155 [*O.B.* is controlling in dependency cases].) We draw all reasonable inferences from the evidence to support the findings and orders of the juvenile court and review the record in the light most favorable to the court's determinations; issues of fact and credibility are the province of the juvenile court. (*In re I.C.* (2018) 4 Cal.5th 869, 892; *In re I.J.* (2013) 56 Cal.4th 766, 773.)

    2. *Donyae Forfeited Any Objection to the Department's Failure To File a Section 241.1 Assessment Report*

Donyae contends he was prejudiced by the failure of the Department and the dependency court to follow the mandate of section 241.1 and rule 5.512. He cites both the Department's omission of the probation officer's section 241.1 report, which included the multidisciplinary team assessment of Anayah, from the July 6, 2021 jurisdiction/disposition report and the court's failure to make section 241.1 findings before proceeding to disposition. Donyae forfeited this claim by failing to object in the dependency proceedings.

As discussed, the jurisdiction/disposition report included the Department's section 241.1 report. That report, prepared for a June 28, 2021 hearing in the delinquency case on Anayah's status, identified the probation officer's report, which included the joint assessment by a multidisciplinary team. Even if Donyae, as Anayah's parent, had not already received that report in the delinquency case, as authorized by rule 5.512(f), he was on notice it existed and had a full opportunity to request a copy before the dependency court conducted the jurisdiction and disposition hearing. His failure to do so forfeited the claim. (*In re M.V., supra,* 225 Cal.App.4th at p. 1508.) "An appellate court will ordinarily not consider procedural defects or erroneous

rulings in connection with relief sought or defenses asserted, where an objection could have been, but was not, presented to the lower court by some appropriate method.  This is the general rule, because any other rule would allow a party to deliberately stand by in silence and permit the proceedings to reach a conclusion in which the party could acquiesce if favorable and avoid if unfavorable.  The forfeiture doctrine has been applied in dependency proceedings in a wide variety of contexts, including cases involving failures to obtain various statutorily required reports." (*In re G.C.* (2013) 216 Cal.App.4th 1391, 1398-1399 [cleaned up]; accord, *In re Dakota S.* (2000) 85 Cal.App.4th 494, 502 [failure to prepare section 366.22 assessment forfeited by failure to object despite that provision's mandatory language].)

Moreover, any error in proceeding with the jurisdiction and disposition hearings in the dependency proceedings on July 14, 2021 appears to be harmless.  (See *In re Jesusa V.* (2004) 32 Cal.4th 588, 624 [harmless error doctrine applies in dependency cases]; *In re Malick T.* (2022) 73 Cal.App.5th 1109, 1128 [same].)  The probation officer's report noted the jurisdiction hearing for Anayah was scheduled for July 14, 2021 and stated, "It is anticipated the petition will be sustained.  At such time DCFS shall be the lead agency."  The report also recommended Anayah be suitably placed with "minor released to DCFS."  That is exactly what happened in the dependency proceedings.  Nothing in the report supports Donyae's assertion that, if there were no section 241.1 error, Anayah would have been released to him or that she be placed in a locked facility, a request Donyae never made in the dependency proceedings.

14

### 3. *Substantial Evidence Supports the Removal Order*

Rejecting as not credible Donyae's denial that he had ever physically disciplined Anayah and his relatively innocuous explanation of the Kaiser parking lot incident, the juvenile court sustained the allegation under section 300, subdivision (a), finding Donyae had bloodied Anayah's face in the past and there existed a substantial risk she would in the future suffer serious physical harm inflicted nonaccidentally by Donyae. Donyae does not challenge this jurisdiction finding on appeal.

The finding that Anayah was at risk of serious physical harm, coupled with Donyae's failure to acknowledge his past wrongful actions, provided ample support for the court's finding Anayah would be in danger if returned to Donyae's home and its order removing Anayah from Donyae's custody. (See *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["[o]ne cannot correct a problem one fails to acknowledge"]; see also *In re M.R.* (2017) 8 Cal.App.5th 101, 109 [parent's minimization of problematic conduct calls into question parent's general judgment]; *In re Jasmine G.* (2000) 82 Cal.App.4th 282, 286 [removal at disposition reversed when record showed parents had expressed remorse for prior physical abuse, engaged in treatment and had changed their attitude about corporal punishment].) Although Donyae had enrolled in an anger management program by the time of the disposition hearing, it was well within the juvenile court's discretion to conclude he had not yet made sufficient progress to lessen the danger to Anayah.

Misstating the record, Donyae asserts the juvenile court did not rely on the sustained jurisdiction findings to support its removal order, basing its decision solely—and improperly, he

15

claims—on his unwillingness to help Anayah with issues relating to her sexual identity. Each aspect of this contention is wrong.

First, after making its jurisdiction findings, the juvenile court stated, "In sustaining this petition in its entirety, I find by clear and convincing evidence that continuance or placement of Anayah in the home of the parents is contrary to her welfare, as there exists a substantial danger to the child's physical health and safety and her emotional well-being if she were to return to the parents' care. And there is no reason to believe that these parents can protect the child and, therefore, removal is necessary." Contrary to Donyae's effort to conjure a basis for reversing the disposition order, the court ordered Anayah's removal because of the jurisdiction findings, not in spite of them. (See *In re D.B.* (2018) 26 Cal.App.5h 320, 332 [jurisdiction findings are prima facie evidence the child cannot safely remain in the home]; *In re T.V.*, *supra*, 217 Cal.App.4th at p. 135 [same].)

Second, as discussed, the court's evaluation of the impact of Donyae's lack of support for Anayah's ongoing issues with sexuality and sexual identity on her emotional well-being was part of its determination that the Department had proved Donyae was unwilling and unable to provide appropriate parental care and supervision of Anayah, as alleged in a separate count under section 300, subdivision (b)(1). In connection with that jurisdiction finding, the court added, "It doesn't look like the father ever tried to get individual counseling, some conjoint counseling, to do some behavioral analysis. It doesn't appear that he's done that. It looks like what he wanted to do was send the kid off to the hospital, discipline her his way and be done with it."

To the extent the court then inferentially included this jurisdiction finding of parental neglect as a basis for its removal

order, in addition to its finding of physical abuse, it was entirely appropriate for it to do so.  The risk of emotional harm to a child if released to a parent is properly considered when the juvenile court determines whether removal is necessary.  (See § 361, subd. (c)(1) [removal order may be based, among other grounds, on substantial danger to the emotional well-being of the child if the child were returned home]; see also *In re D.B.*, *supra*, 26 Cal.App.5th at p. 332.)

## DISPOSITION

The July 14, 2021 disposition order is affirmed.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.