Filed 1/18/24  In re D.F. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re D.F., a Person Coming Under the Juvenile Court Law. | D082638 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. J520615) |
| Plaintiff and Respondent, | |
| v. | |
| J.F. et al., | |
| Defendants and Appellants. | |

APPEAL from orders of the Superior Court of San Diego County, Alexander M. Calero, Judge.  Affirmed.

Pamela Rae Tripp, under appointment by the Court of Appeal, for Defendant and Appellant, J.F.

Sarah Vaona, under appointment by the Court of Appeal, for Defendant and Appellant, J.G.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Evangelina Woo, Deputy County Counsel, for Plaintiff and Respondent.

J.F. (mother) appeals the juvenile court's denial of her petition under Welfare and Institutions Code[1] section 388 to modify an order terminating reunification services regarding her daughter, D.F., and setting a hearing for termination of parental rights under section 366.26. She also appeals the subsequent termination of her parental rights. Mother contends both orders should be reversed because the circumstances had changed, and it was in D.F.'s best interests to be in mother's custody. J.G. (father) also appeals the termination of his parental rights and adopts mother's arguments.[2] We find no error and affirm the orders.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother started using methamphetamine at the age of 13 and heroin at the age of 29. Although she previously graduated from two substance abuse programs, she used methamphetamine and heroin every day before becoming pregnant with D.F. at the age of 37. Mother attempted to stop using while pregnant with D.F., but she ultimately used methamphetamine and heroin during the pregnancy. When D.F. was born in December 2020, she tested positive for amphetamine and methamphetamine.

The matter was referred to the Health and Human Services Agency (Agency), who filed a petition pursuant to section 300, subdivision (b),

---

[1]   All statutory references are to the Welfare and Institutions Code.

[2]   Because father does not raise any arguments regarding his circumstances, we focus our review on the facts and issues related to mother.

2

alleging that mother was unable to care for D.F. due to her substance abuse. On December 31, 2020, the juvenile court ordered that D.F. be detained in foster care or the home of an approved relative.

When D.F. was released from the hospital on January 5, 2021, she was initially placed with a foster parent. She was then placed with her maternal grandmother on January 30, 2021. Mother continued to use drugs after D.F.'s birth and she unsuccessfully attempted two substance abuse treatment programs over the next two months.

On May 4, 2021, the juvenile court sustained the Agency's petition and declared D.F. a dependent. The court placed D.F. with her maternal grandmother and ordered reunification services for mother.

After completing an inpatient substance abuse program, mother relapsed from June 2021 through August 2021. The maternal grandmother, who also has a long substance abuse history, relapsed during this time as well, and the Agency returned D.F. to the foster parent's care on July 16, 2021.

By the end of August 2021, mother entered another substance abuse program. At the six-month review hearing, which took place on January 7, 2022, the juvenile court found that mother was making adequate progress and ordered that she continue to receive reunification services.

It was thereafter discovered that mother had a second relapse from December 2021 through February 2022. Mother then continued her recovery efforts with additional substance abuse treatment, and by August 2022 the juvenile court authorized unsupervised visits with D.F. Based in part on mother's progress, the 12-month review hearing was continued several times and set to be heard with the 18-month review hearing. By December 2022,

3

mother reported 10 months of sobriety, and she began having overnight visits with D.F.

On January 23, 2023, the Agency placed D.F. in mother's care. That same day, mother left D.F. with the maternal grandmother so she could use methamphetamine because she was stressed and did not know how to manage working and taking care of D.F. The Agency returned D.F. to the foster parent the following day, and determined that despite completion of substance abuse programs, mother did not have the tools or the self-discipline necessary to maintain her sobriety.

The 18-month review hearing went forward on February 7, 2023, at which time the juvenile court terminated reunification services for mother and set the matter for a section 366.26 hearing to decide a permanent plan for D.F.

On August 15, 2023, mother filed a section 388 petition seeking modification of the February 7, 2023 order. She requested that the juvenile court place D.F. in her care, continue reunification services, and vacate the section 366.26 hearing. The petition alleged mother achieved sobriety by attending South Bay Women's Recovery Center (SBWRC), she maintained excellent visitation with D.F., and she had stable housing. In support of her petition, mother submitted two progress reports from SBWRC, a relapse prevention plan, documentation regarding completed classes and meetings, a letter from her counselor at El Dorado Community Service Center, and drug test results from February 17, 2023, through July 13, 2023.

Mother's section 388 petition was heard together with the section 366.26 hearing on August 15 and 18, 2023. At those hearings, the juvenile court admitted two reports and testimony from an Agency social worker recommending termination of parental rights based on mother's unresolved

4

substance abuse and D.F.'s need for permanency. Mother's counselor from SBWRC, Vicky Baird (Baird), also testified, opining that mother's recent recovery is different because she has a new desire to stay sober and she knows her triggers. Mother testified as well, stating that she has a very strong bond with D.F., and she has increased her recovery efforts by going to meetings and church, and by relying on others in recovery.

The juvenile court denied mother's section 388 petition, finding at best, the circumstances that brought D.F. into dependency, namely mother's long history of substance abuse, were changing but not yet changed. The court also found that modification of the prior order would not be in D.F.'s best interests. It then proceeded under section 366.26 and terminated mother's parental rights. Mother timely appealed from both rulings.

II.

DISCUSSION

Mother argues the juvenile court abused its discretion in denying her section 388 petition because she demonstrated a change of circumstances and that returning D.F. to her custody was in D.F.'s best interests. She further contends that if the denial of her section 388 petition is reversed, the order terminating her parental rights under section 366.26 should also be reversed. Because we find no error in the denial of the section 388 petition, we affirm both orders.[3]

---

[3] Mother also claims the juvenile court "completely bypassed" her reunification services. Mother's factual assertions in support of this claim are not supported by a proper citation to the record, and they are directly contradicted by the record and her own briefing. Additionally, mother forfeited this claim because she did not challenge the adequacy of her reunification services in the juvenile court. (*In re G.C.* (2013) 216 Cal.App.4th 1391, 1398.)

5

A.    *Standard of Review*

"A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the child." (*In re A.A.* (2012) 203 Cal.App.4th 597, 611.)  "We review a juvenile court's denial of a section 388 petition for abuse of discretion, and review its factual findings for substantial evidence.  [Citation.]  We may disturb the exercise of the court's discretion only when the court has made an unreasonable or arbitrary determination." (*In re J.M.* (2020) 50 Cal.App.5th 833, 846 (*J.M.*).)

B.    *Changed Circumstances*

Mother argues she made significant progress during the case and at one point regained care of D.F., so her circumstances have changed from where she started.  She contends her most recent relapse was brief and disclosed immediately, after which she intensified her recovery services and maintained six additional months of sobriety.  She further claims the juvenile court's determination that her circumstances were changing but not changed places semantics over justice and is unrealistic in the context of recovery from drug addiction.  We disagree for three reasons.

First, mother's focus on her progress from where she started is misplaced.  "A parent establishes a substantial change of circumstances for purposes of section 388 by showing that, *during the period between termination of reunification services and the permanency planning hearing*, he or she has resolved the previously unresolved issues supporting juvenile court jurisdiction." (*J.M., supra*, 50 Cal.App.5th at p. 846, italics added.)  As such, the relevant change is that which occurred after mother's reunification services were terminated on February 7, 2023.

6

Second, "references to 'changed' and merely 'changing' circumstances are another way of describing the distinction on which we rely, between changes that are material and those that are not. However expressed, the point is that section 388 requires a change that is relevant and substantial (rather than irrelevant or de minimis) when considered in light of all of the circumstances of the case." (*In re N.F.* (2021) 68 Cal.App.5th 112, 121, fn. 3 (*N.F.*).) The juvenile court therefore did not rely on an incorrect standard when it determined mother's circumstances were merely changing but not changed.

Third, "In the context of a substance abuse problem that has repeatedly resisted treatment in the past, a showing of materially changed circumstances requires more than a relatively brief period of sobriety or participation in yet another program." (*N.F.*, *supra*, 68 Cal.App.5th at p. 121.) Courts have routinely reached this conclusion. (E.g., *In re Amber M.* (2002) 103 Cal.App.4th 681, 686 [372 days of sobriety was insufficient in light of mother's 17-year substance abuse history and two previous relapses during the case]; *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423 [father's seven months of sobriety since his last relapse was inadequate based on long history of drug use with alternating periods of sobriety]; *N.F.*, *supra,* 68 Cal.App.5th at pp. 119, 121-122 [five months of sobriety after completing 90-day residential treatment program was not enough due to history of relapses and conflicting evidence of current sobriety]; *In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081 [parents' most recent efforts at sobriety "were only three months old" and did not demonstrate changed circumstances due to extensive histories of drug use and years of failing to reunify with their children]; *In re Mary G.* (2007) 151 Cal.App.4th 184, 205-206 [mother being

clean for three months was insufficient in light of 23-year substance abuse history].)

While we commend mother's efforts, her circumstances are like these previous cases. She had a 28-year substance abuse history, and she continued to use drugs daily before this case started despite graduating from two substance abuse programs. Her attempt at sobriety while pregnant with D.F. was unsuccessful, and she relapsed three times during this dependency case. Mother's alleged six months of sobriety after the court terminated reunification services is also not a new circumstance, as she had previously attained almost a full year of sobriety during this case.

Mother's characterization of her latest relapse and subsequent sobriety are also inaccurate. In her brief, mother describes the relapse as a brief one-day incident that was short lived. However, that relapse occurred on January 23, 2023, and mother continued to test positive for methamphetamine and amphetamine through February 28, 2023. The latest relapse therefore lasted over a month, which is similar to her two previous relapses during this case. Mother also did not remain sober for the six months leading up to the hearing on her section 388 petition as she claims. She tested positive for marijuana on March 15, 2023, and April 7, 2023, so she was sober for approximately four months when the juvenile court heard the matter on August 18, 2023.

Despite mother's new relapse prevention plan and expanded support network, there was insufficient evidence of material progress with the protective issue of her long-term substance abuse. Mother submitted progress reports from SBWRC signed by Baird indicating that mother was "assessed at an IOS level of care" and made significant progress. However, Baird was unable to identify what IOS meant. She also testified that the

8

different levels of care at SBWRC are identified as "dimensions" one through five, but she was unable to explain the dimensions. As noted by the juvenile court, without knowing the measurements used by mother's substance abuse program, her commitment and progress could not be adequately assessed. Baird also had not spoken to anyone from mother's prior treatment programs, so she was unable to compare the results in the current program with the previous unsuccessful programs. Further, while Baird believed mother's new prevention plan was adequate because mother was now aware of her triggers, mother continued to live with the maternal grandmother despite identifying that neighborhood as a trigger.

As for the letter from mother's counselor at El Dorado Community Service Center, it indicated mother had been a patient since March 11, 2021, but it contained no other dates. The letter was therefore inadequate to establish any progress made after the February 7, 2023 order terminating reunification services. The juvenile court also questioned mother's credibility, and we defer to its assessment of that issue. (*In re Ana C.* (2012) 204 Cal.App.4th 1317, 1329.) It determined that mother's inability to recall the details of her relapses and periods of sobriety, as well as her tone and demeanor on the stand, raised concerns about her newfound commitment to sobriety and her insight into the problems that led to dependency.

Under these circumstances, the juvenile court reasonably determined that mother's protracted and serious substance abuse, which was the reason for D.F.'s detention, had not materially changed. As such, no abuse of discretion has been shown on this ground.

C.    *Child's Best Interests*

Even if mother were able to establish changed circumstances, she fails to show the juvenile court abused its discretion regarding D.F.'s best

interests. Mother claims that returning D.F. to her care was in D.F.'s best interests because she maintained a close and loving relationship with D.F. throughout the dependency case, and D.F.'s interest in preserving the family unit is of significant value.

" ' "[F]amily preservation ceases to be of overriding concern if a dependent child cannot be safely returned to parental custody and the juvenile court terminates reunification services. Then, the focus shifts from the parent's interest in reunification to the child's interest in permanency and stability." ' " (*In re S.M.* (2004) 118 Cal.App.4th 1108, 1121.) "[A] parent's petition for either an order returning custody or reopening reunification efforts must establish how such a change will advance the child's need for permanency and stability." (*In re J.C.* (2014) 226 Cal.App.4th 503, 527 (*J.C.*).)

For example, in *J.C.*, the parent showed changed circumstances through long-term sobriety and a renewed interest in parenting classes. (*J.C.*, *supra*, 226 Cal.App.4th at p. 526.) However, the juvenile court did not abuse its discretion in denying the parent's petition to vacate a section 366.26 hearing because the child had stable placement with the maternal aunt since the child's birth two and one-half years earlier, and the parent did not address how returning custody of the child to her would advance the child's need for permanency and stability. (*J.C., supra,* at p. 526.)

Like the parent in *J.C.*, mother fails to address D.F.'s need for permanency and stability, and the record indicates that need would not be met by returning D.F. to mother's care. At the time the juvenile court denied mother's section 388 petition, D.F. was two years and seven months old. Other than six months as an infant with the maternal grandmother and one day when mother regained care in January 2023, D.F. spent her entire life in

10

the care of the foster parent. D.F. was happy, safe, and comfortable with the foster parent, whom she referred to as "mommy." The Agency determined that the foster parent had done an exceptional job caring for D.F., she had a stable job and housing, and she had completed all adoption requirements and was adoption ready.

On the other hand, the Agency determined that mother's ongoing pattern of relapses impacted her ability to build a substantial parent-child relationship, which caused a lack of stability and consistent care for D.F. Mother also lacked stable employment or housing. She did not have a job, and although she was considering returning to work, she had a long history of unemployment and work was one of the stressors that led to her recent relapse. As for housing, mother was on a waiting list for a sober living home, and she intended to live with D.F. at the maternal grandmother's house. However, the maternal grandmother's neighborhood was one of mother's triggers, the maternal grandmother had a long history of substance abuse and D.F. was previously removed from her care due to a relapse, and mother was not aware of anything the maternal grandmother had done to address her substance abuse other than taking a drug test for the Agency.

Based on the foregoing, it is reasonable to conclude that returning D.F. to mother's care would not advance D.F.'s need for permanency and stability. As such, mother has not shown that the juvenile court abused its discretion regarding D.F.'s best interests.

## III.

## DISPOSITION

The orders are affirmed.

IRION, J.

WE CONCUR:

O'ROURKE, Acting P. J.

CASTILLO, J.