Filed 6/29/22  In re K.O. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re K.O., a Person Coming Under the Juvenile Court Law. | |
| SONOMA COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>M.O. et al.,<br><br>        Defendants and Appellants. | A162198, A162415, A163649<br><br>(Sonoma County Sup. Ct. No. DEP-5836) |

C.R. (Mother) and M.O. (Father) appeal the juvenile court's order terminating their parental rights.  They argue the court prejudicially failed to rule on a modification petition and improperly declined to apply the parental benefit exception.  We disagree.  We do, however, agree with their final contention — they argue the court failed to comply with its duty of inquiry under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA).  We conditionally reverse the order terminating parental rights and remand the matter for the court to comply with its duty of inquiry under ICWA.

1

## BACKGROUND

The history of this dependency proceeding is set forth in this court's prior opinion, which we incorporate here by reference. (*Sonoma Cty. Dep't of Human Servs. v. C.R.* (*In re K.O.*) (May 5, 2020, A158039) [nonpub. opn.].) In that case, this court affirmed a July 2019 dispositional order sustaining Sonoma County Department of Human Services' (Department's) allegations that K.O. came within Welfare and Institutions Code[1] section 300 due to Mother's ongoing substance abuse problem — she tested positive for methamphetamine, benzodiazepine, and opiates throughout her pregnancy. (*In re K.O.*, *supra*, A158039; § 300, subd. (b) [child has suffered or there is substantial risk the child will suffer serious physical harm or illness resulting from parent's failure or inability to supervise or protect the child].) The juvenile court further found true allegations that Father had a substance abuse problem, and he knew of Mother's substance abuse but failed to intervene to protect the child. (*In re K.O.*, *supra*, A158039.) The court declared K.O. a dependent, removed her from her parents' custody and placed her in foster care the same day K.O. was discharged from the hospital after her birth, and ordered reunification services for both parents. (*Ibid.*)

After a six-month review hearing, the juvenile court extended reunification services for both Mother and Father and ordered in-person supervised visitation. Yet Father did not participate, showed little interest or acknowledgement of K.O., and would often wander to his car and back. By October 2020, the Department's status review report recommended terminating reunification services and setting a hearing to select and implement a permanent plan for K.O. (§ 366.26.) In its report, the

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

Department noted Mother and Father were being evicted from their home, which had severe cleanliness and safety issues. Mother and Father further declined to sign a case plan, which among other things, required them to abstain from using illegal drugs or alcohol, to comply with required drug tests, and to express anger appropriately. Although Mother stated she complied with the case plan by attending weekly Alcoholics Anonymous meetings, participating in individual therapy, creating a network of sober friends and extended family, she refused to sign a release of information that would allow the Department to verify her case plan progress. Mother also failed to provide the Department with any verifiable substance testing results. Moreover, the Department could not verify Father's progress on the case plan since Father refused to sign a release of information, and he refused any referrals or services offered by the Department, such as parenting classes, substance testing, and counseling.

Father later filed a petition to modify the juvenile court's 2019 order removing K.O. (§ 388.) He sought overnight and unsupervised visitation, and the return of K.O. to his custody within 30 days. Father alleged he developed a positive support system and addressed the elements in his case plan, both changed circumstances. According to Father, a modification was in K.O.'s best interests because she had no opportunity to attach to him, and he had a proven track record of parenting his other children.

After a hearing on Mother and Father's 18-month status review and Father's modification petition, the juvenile court concluded returning K.O. to their physical custody created a substantial risk of detriment to her safety, protection, or physical or emotional well-being. It found by clear and convincing evidence reasonable services were offered, but there was no substantial probability K.O. would be returned to her parents because of

3

their failure to make significant and consistent progress in any court-ordered services. The court terminated reunification services and scheduled a hearing to determine K.O.'s permanent plan — whether to terminate parental rights that would then allow for adoption, or maintain parental rights and select a different permanent plan. (§ 366.26.) The court did not rule on the modification petition.

In 2021, the Department filed a report, again recommending Mother and Father's parental rights be terminated and adoption for K.O. K.O.'s foster parents expressed the desire to adopt K.O., who had been in their care since birth and regarded them as her parents. Mother regularly attended in-person visits with K.O., who responded well to her affection and appropriate play. Father also began participating more during visits that took place outdoors. But at the end of visits, K.O. sought her foster mother and easily transitioned back into her care.

In May 2021, relying on an April 2019 drug test result, Mother filed a petition to modify the juvenile court's order terminating reunification services. (§ 388.) She also alleged she had safe, stable housing — a new apartment. She requested additional reunification services and K.O.'s return to her custody. At a combined contested permanency hearing and a hearing on Mother's modification petition, a social worker testified K.O. had developed a very secure attachment to her foster parents, who meet her daily needs. According to the social worker, removing K.O. from her foster parents would be traumatic.

The juvenile court found Mother and Father had shown a change of circumstances, but modification was not in K.O.'s best interests since it would be harmful to return her to their custody. It also found under the totality of the circumstances that it was in K.O.'s best interests to be adopted

4

by her foster family and to terminate parental rights. The court determined Mother had not established termination would be detrimental to the child under the parental benefit exception — applicable where the parent has maintained regular visitation and contact with the child, the child would benefit from the continued relationship, and termination of the relationship would be detrimental to the child. The court terminated parental rights, selected adoption as K.O.'s permanent plan, and designated her current caregivers as the prospective parents.

## DISCUSSION

Mother and Father advance a series of challenges to the juvenile court order terminating their parental rights.[2] Father argues the court committed reversible error when it failed to rule on his modification petition. Mother also argues the court improperly assessed the parental benefit exception. Finally, they argue conditional reversal is warranted because the Department and court failed to comply with the statutory requirements for an adequate inquiry into whether K.O. may be an Indian child under ICWA. We address each argument in turn.

First, Father contends the juvenile court order terminating parental rights must be reversed due to the court's failure to rule on his modification petition seeking additional visitation and returning K.O. to his custody. Father forfeited this argument on appeal.

During the hearing on Mother and Father's 18-month status review, the juvenile court acknowledged Father's modification petition, proceeded to hear argument on both the petition and the review, and issued its findings and orders concerning the review. But Father, who was represented by

---

[2] Mother and Father filed separate appeals which we later consolidated.

5

counsel, did nothing to secure a ruling on his modification petition. (*In re Malick T.* (2022) 73 Cal.App.5th 1109, 1127 [forfeiture applies "when a party did not alert the juvenile court that he or she objected to an order being made or when a party failed to ask in the juvenile court for relief being sought on appeal"].) The lack of a ruling was thus based on Father's failure to alert the court to its oversight, not on an erroneous interpretation of law, contrary to Father's assertions. (Compare with *ibid* [lower court "denied a party's request for an order on a legally incorrect ground"].)

Even assuming the failure to rule on Father's petition was error, it was harmless. (*In re J.F.* (2011) 196 Cal.App.4th 321, 336.) The record demonstrates there is no reasonable probability the juvenile court would have granted Father's requested modification had it issued a ruling. (*In re Cristian I.* (2014) 224 Cal.App.4th 1088, 1098–1099 [reversal justified only where the party would obtain a more favorable result in the absence of the error].) Under section 388, a court may modify an order if a parent establishes, by a preponderance of the evidence, that changed circumstances exist and the proposed modification would promote the child's best interests. (§ 388; *In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.) Father failed to demonstrate either element.

The juvenile court found Father's progress toward mitigating the issues necessitating removal — Father's substance abuse problem as demonstrated by seven convictions for substance abuse related crimes — was nonexistent. (*In re A.A.* (2012) 203 Cal.App.4th 597, 612 ["The change in circumstances must relate to the purpose of the order and be such that the modification of the prior order is appropriate"].) While Father insisted he did not have a substance abuse problem, he refused to sign releases of information that would allow the Department to verify progress on his case plan. (*In re*

6

*Anthony W.* (2001) 87 Cal.App.4th 246, 251 [finding allegations regarding participation in substance abuse classes conclusory when made without dates, certificates, or drug test results].) He consistently refused the Department's referrals for services, including substance testing and counseling. In addition, Father acknowledged smoking a marijuana joint one month or several weeks before the 18-month status review hearing. He further admitted to difficulties in identifying whether Mother was under the influence, a factor that could impact Father's ability to protect K.O. To the extent Father cites his ability to care for his other children as evidence of changed circumstances, we disagree. The dependency petition was not based on Father's ability, or lack thereof, to care for his other children. (See *In re A.A.*, at p. 612.)

Nor was there evidence demonstrating that increased visitation and transitioning K.O. back to Father's custody would be in her best interests. The juvenile court expressly found returning K.O. to her parents would result in a substantial risk of harm to K.O.'s safety and emotional well-being. K.O. had lived with her foster parents since birth, identified them as her parents, and looked to them to satisfy all her needs. After visits with Mother and Father, K.O. easily transitioned back to her foster mother's care. Due to K.O.'s substantial ties to her foster parents, the Department reported her removal from their home would be traumatic and detrimental to her well-being. Father himself testified it would be difficult to transition K.O. back to his care because she had bonded with her foster parents. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 532 ["strength of relative bonds between the dependent children to *both* parent and caretakers" a factor to consider when deciding whether granting a section 388 petition is in the child's best

7

interests].) There is no reasonable probability the court would have granted Father's request to modify the order removing K.O.

Next, Mother contends both that the juvenile court relied on improper factors when assessing whether the parental benefit relationship exception applied, and the Department's report did not provide adequate information regarding Mother's relationship with K.O. or the benefits of continuing that relationship. We disagree.

At a permanency plan hearing, the juvenile court selects and implements a permanent plan for a dependent child, such as adoption, guardianship, or long-term foster care. (§ 366.26, subd. (b); *In re Fernando M.* (2006) 138 Cal.App.4th 529, 534.) If the court finds a child is adoptable, it must terminate parental rights and order the child placed for adoption unless termination would be detrimental under an enumerated statutory exception, such as the parental benefit exception. (§ 366.26, subd. (c)(1); *In re Mary G.* (2007) 151 Cal.App.4th 184, 206–207.) A parent establishes this exception by demonstrating by a preponderance of the evidence "(1) regular *visitation and contact*, and (2) a *relationship*, the continuation of which would *benefit* the child such that (3) the termination of parental rights would be *detrimental* to the child." (*In re Caden C.* (2021) 11 Cal.5th 614, 631 (*Caden C.*).) We review the factual determinations underlying the court's evaluation of the first two elements for substantial evidence, but the "the ultimate decision—whether termination of parental rights would be detrimental to the child due to the child's relationship with [the] parent—is discretionary and properly reviewed for abuse of discretion." (*Id.* at pp. 640–641.) An arbitrary, capricious, or patently absurd determination is an abuse of discretion. (*Id.* at p. 641.)

Evaluating whether Mother established the parental benefit exception, the juvenile court acknowledged Mother's regular and consistent visitation

8

with K.O. It recited the factors for assessing the existence of a beneficial relationship, such as the "age of the child, the portion of the child's life spent in the parent's custody, the positive or negative effect of interaction between the parent and the child, and the child's particular needs." (*Caden C.*, *supra*, 11 Cal.5th at p. 632.) The court noted that if "severing the natural parent-child relationship would deprive the child of a substantial positive emotional attachment" that would greatly harm the child, Mother overcomes the preference for adoption. (*Id.* at p. 633 ["court must decide whether it would be harmful to the child to sever the relationship and choose adoption"].) Finally, it stated the need to "balance the strength and quality of the natural parent-child relationship" "against the security and sense of belonging a new family would confer." (*Ibid.*) It then concluded, "It's been two years and four months, and at this point, and based on the circumstances of the totality of this case, it is [K.O.'s] best interest that she be adopted by her resource family."

The record suggests Mother regularly visited K.O., and that Mother had an affectionate and playful relationship with K.O., the continuation of which would benefit K.O. to some degree.[3] But the juvenile court did not err in declining to apply the parental benefit exception as substantial evidence supports an implied finding that Mother failed to establish terminating the relationship would harm K.O. to an extent not outweighed by the benefits of adoption. (*Caden C.*, *supra*, 11 Cal.5th at pp. 634, 636; *In re Zacharia D.*

---

[3] Even though Mother had the burden of establishing K.O. had a substantial, positive emotional attachment to her, she challenges the adequacy of the Department's permanency report regarding her relationship with K.O. Mother forfeited this argument by failing to raise it in the juvenile court. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293; *In re G.C.* (2013) 216 Cal.App.4th 1391, 1399.)

(1993) 6 Cal.4th 435, 456 [appellate courts infer the trial court made all factual findings necessary to support a judgment in juvenile dependency].) K.O., who was approximately two years old by the time of the permanency hearing, had never been in Mother's care. She was placed in foster care almost immediately after her birth and had developed a secure attachment to her foster parents such that being removed from their care would be traumatic. (*Caden C.*, at p. 632; *In re Eli B.* (2022) 73 Cal.App.5th 1061, 1074–1076 [child spent minimal time in parents' care and "had barely ever known mother as a parental figure"].) On this record, the court was within its discretion to conclude the benefits of permanence outweighed the maintenance of K.O.'s relationship with Mother. (*Id.* at pp. 1075–1076.)

Nothing in the juvenile court's ruling demonstrates it gave improper weight to Mother's ongoing substance abuse when assessing the parental benefit exception. (*In re A.L.* (2022) 73 Cal.App.5th 1131, 1161 [indulging every presumption to uphold juvenile court judgment, and appellant must affirmatively demonstrate error].) "Parents need not show that they are 'actively involved in maintaining their sobriety or complying substantially with their case plan' " to establish the exception. (*Caden C.*, *supra*, 11 Cal.5th at p. 637.) It only applies "when the parent has presumptively *not* made sufficient progress in addressing the problems that led to dependency." (*Ibid.* [section 366.26 hearing is held when "the parent has not been successful in maintaining the reunification plan meant to address the problems leading to dependency"].) But the record does not indicate the court used Mother's problems "to deprive [K.O.] of the chance to continue a substantial, positive relationship with" Mother. (*Caden C.*, at p. 643.) The court simply complimented Mother's progress with maintaining sobriety and a support network as they related to K.O.'s adoptability assessment and

10

Mother's section 388 modification petition. (Compare with *In re B.D.*, *supra*, 66 Cal.App.5th at p. 1228 [juvenile court improperly relied heavily on parents' failure to complete reunification plans and were unable to care for children based on continued substance abuse].) It made no mention of Mother's *lack of progress* regarding her substance abuse issues when assessing the parental benefit exception.

Nor did the juvenile court impermissibly rely on the fact that K.O.'s primary bond is with her foster parents or the possibility of post-adoption contact between Mother, Father and K.O., contrary to Mother's assertions. (*In re J.D.* (2021) 70 Cal.App.5th 833, 864, 866–867 [court may not consider the possibility of any post-adoption contact between parent and child or compare the child's attachment to the custodial care giver to the child's attachment to the parents when assessing the beneficial-relation exception].) True, the Department's report and K.O.'s counsel noted K.O.'s foster parents were informed they could agree to continued contact between Mother, Father, and K.O. Similarly, the Department's report and the social worker testimony noted K.O. was comfortable with her foster parents. But Mother fails to identify any statement or ruling by *the court* that it was relying on either factor to determine whether Mother established the existence of a beneficial relationship.[4] (*In re A.L.*, *supra*, 73 Cal.App.5th at p. 1161.)

In sum, the juvenile court properly assessed the parental benefit exception.

---

[4] These portions of the Department's report and the social worker's testimony were presented at a combined section 366.26 permanency and section 388 modification petition hearing. "Regardless of their significance to the court's determination of whether the parental-benefit exception applied, these were all issues of high relevance to the court's decision on the 388 petition." (*In re A.L.*, *supra*, 73 Cal.App.5th at p. 1160, fn. 13.)

Finally, Mother and Father contend the Department failed to fulfill its obligation to conduct an adequate inquiry under ICWA.  We accept the Department's concession on this issue.

ICWA establishes minimum federal standards that a state court must follow before removing an Indian child — a member of an Indian tribe or eligible for membership in an Indian tribe and biological child of a member — from his or her family.  (25 U.S.C. § 1903(4); § 224.1, subds. (a)–(b); *In re T.G.* (2020) 58 Cal.App.5th 275, 287.)  The court and county welfare department have "an affirmative and continuing duty to inquire whether a child" who is the subject of a juvenile dependency petition "is or may be an Indian child." (§ 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a).)[5]  An initial inquiry includes asking parents and extended family members whether the child is or may be an Indian child.  (§ 224.2, subd. (b); *In re J.S.* (2021) 62 Cal.App.5th 678, 686.)  If the court or department "has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child," they must further inquire about the child's possible Indian status as soon as practicable.  (§ 224.2, subd. (e); see rule 5.481(a)(4); *J.S.*, at p. 686.)  A further inquiry requires interviewing extended family members to obtain current and former addresses, birth date, place of birth and death, and tribal enrollment information of the child's parents, grandparents, and great-grandparents or Indian custodian. (§§ 224.2, subd. (e)(2)(A), 224.3, subd. (a)(5).)

Here, the Department failed to fulfill its duty to engage in this further inquiry.  Although Mother reported she had no Indian ancestry, K.O.'s paternal grandmother reported there may be Cherokee ancestry through

---

[5] Subsequent undesignated rule references are to the California Rules of Court.

her mother — K.O.'s great-grandmother.  This provided reason to believe Indian children might be involved in this dependency proceeding and triggered the Department's duty to make a further inquiry.  (*In re T.G.* (2020) 58 Cal.App.5th 275, 292.)  Nothing in the record indicates the Department contacted K.O.'s paternal great-grandmother or other extended family who could have provided different information regarding K.O.'s potential Indian heritage.  (*In re Michael V.* (2016) 3 Cal.App.5th 225, 235–236 [social services agency must contact family members who may have relevant information about possible Indian ancestry].)

The parties dispute the appropriate remedy — conditionally affirming or conditionally reversing the order terminating parental rights.  We conclude conditional reversal for failure to comply with ICWA is appropriate where parental rights have been terminated.  (*In re Veronica G.* (2007) 157 Cal.App.4th 179, 187 [noting that affirming juvenile court orders is proper where parental rights have *not* been terminated and ICWA compliance is the only challenge to the juvenile courts' orders]; *In re Justin S.* (2007) 150 Cal.App.4th 1426, 1437 [conditionally reversing order terminating parental rights to allow parent's participation in limited remand proceedings ensuring ICWA compliance].)  The order terminating parental rights is subject to automatic reinstatement if, after the Department engages in a further inquiry, it is ultimately determined that K.O. is not an Indian child within the meaning of the ICWA.  (*In re Elizabeth W.* (2004) 120 Cal.App.4th 900, 908.)

## DISPOSITION

The order terminating parental rights is conditionally reversed.  The matter is remanded to permit the Department and the juvenile court to comply with the inquiry and notice provisions of ICWA and California law. If

13

the court finds K.O. is an Indian child, it shall conduct a new section 366.26 hearing, as well as all further proceedings, in compliance with ICWA and related California law.  If the court concludes ICWA does not apply, the section 366.26 order shall be immediately reinstated.

_____
Rodríguez, J.

WE CONCUR:


_____
Tucher, P. J.


_____
Petrou, J.



A162198/A162415/A163649